MICHAEL GILLUM, ADMINISTRATOR (ESTATE OF HARUNA GILLUM), ET AL. *v.*
YALE UNIVERSITY ET AL.
(AC 19546)

Foti, Dranginis and Hennessy, Js.

---

[8] See footnote 6.

Argued January 23—officially released April 17, 2001

*William F. Gallagher*, with whom, on the brief, were *Cynthia C. Bott* and *Terence S. Hawkins*, for the appellants (plaintiffs).

*Jeffrey R. Babbin*, with whom was *Stewart E. Newman*, for the appellee (named defendant).

*Daniel P. Scapellati*, with whom were *Richard C. Tynan* and, on the brief, *Kevin E. Majewski*, for the appellee (defendant James L. Scott, Jr.).

*Opinion*

FOTI, J. The plaintiffs, administrators of the estates of the decedents, Haruna Gillum and Angelina Bryant,[1] appeal from the judgment of the trial court rendered after it granted summary judgment in favor of the defendants, James L. Scott, Jr., a psychiatrist, and Yale University (Yale). The issue presented in this appeal is whether the court properly determined that the plaintiffs could not bring this action under the accidental failure of suit statute, General Statutes § 52-592. The detailed procedural history and facts that follow are

---

[1] The plaintiffs are Michael Gillum, administrator of the estate of Haruna Gillum, and Judith A. Vaughan-Johnson, administrator of the estate of Angelina Bryant.

necessary to our consideration of the issue presented in this appeal. We affirm the judgment of the trial court.

The plaintiffs had alleged that during the fall of 1988 and into the winter of 1989, Gillum, a Yale graduate student, received inadequate psychiatric care and evaluation from the defendants. They further alleged that this malpractice caused Gillum to kill himself and Bryant, with whom he had a personal relationship.

The plaintiffs filed their complaint in the original action (*Gillum I*) in April, 1991. In June, 1991, Yale filed a request to revise the plaintiffs' complaint. The plaintiffs failed either to object to the request or to file a revised complaint. The court first dismissed the action under its dormancy dismissal program, pursuant to Practice Book § 251,[2] in December, 1992. The plaintiffs waited more than four months, until April, 1993, before filing a motion to open the judgment of dismissal. The court granted the plaintiffs' motion to open in April, 1993. The plaintiffs did not file a revised complaint at that time. The court again scheduled the action for dormancy dismissal in December, 1993. The court granted the plaintiffs' motion to exempt the matter from the dormancy calendar. The plaintiffs ultimately filed a revised complaint in February, 1994.

The second dismissal was the result of the plaintiffs' failure to comply with discovery requests. Yale served the plaintiffs with interrogatories and requests for production in September, 1991. In February, 1992, Yale filed a motion for a nonsuit based on the plaintiffs' failure to respond to those requests. In August, 1992, after Yale reclaimed its motion for a nonsuit, the court

---

[2] Practice Book § 251, now § 14-3 (a), provides in relevant part: "If a party shall fail to prosecute an action with reasonable diligence, the court may, after hearing, on motion by any party to the action pursuant to Sec. 196 [now § 11-1], or on its own motion, render a judgment dismissing the action with costs. At least two weeks' notice shall be required except in cases appearing on an assignment list for final adjudication. . . ."

issued an order of compliance, ordering the plaintiffs to comply within two weeks with Yale's requests. On August 31, 1992, the court granted the plaintiffs' request for an extension of time to answer the interrogatories. In May, 1993, Yale filed a motion to dismiss for the plaintiffs' failure to comply with the September, 1991 interrogatory and production requests. At a subsequent short calendar hearing on that motion, the plaintiffs' counsel represented that the plaintiffs would comply with the requests by June 4, 1993. On June 9, 1993, Yale filed a second motion to dismiss for failure to comply with the court's August, 1992 order of compliance.

On June 28, 1993, the plaintiffs' counsel filed an objection to that motion and represented, inter alia, that he had faced "significant difficulties in maintaining communications with the parties."[3] After the plaintiffs' counsel failed to appear at the court's June 29, 1993 short calendar hearing on the motion to dismiss, the court granted Yale's motion. The plaintiffs finally submitted verified answers to Yale's September, 1991 interrogatories on January 7, 1994. On February 16, 1994, the plaintiffs filed a motion to reopen, which was granted on March 7, 1994.

The third, and ultimately final, dismissal of *Gillum I* arose out of the plaintiffs' counsel's failure to attend a mandatory pretrial conference before the court. During a June 19, 1996 status conference, the plaintiffs' counsel and Yale's counsel scheduled a pretrial conference for January 14, 1997. On January 14, 1997, counsel for both Yale and Scott appeared at the pretrial conference, but the plaintiffs' counsel failed to appear. The court rendered a judgment of dismissal, pursuant to Practice Book § 251, now § 14-3, in favor of the defendants.

---

[3] On that same date, the plaintiffs submitted unverified responses to Yale's first set of interrogatories and production requests.

According to the plaintiffs' counsel, he learned about the missed pretrial conference during a coincidental meeting with one of the defendant's attorneys some time later that month. He remembers having expressed "dismay and surprise" after realizing that he had failed to attend the conference. The plaintiffs' counsel did not take steps to remedy his failure to attend for nearly three months. On April 18, 1997, the plaintiffs' counsel filed a motion to open the judgment of dismissal. On May 2, 1997, Yale filed a timely objection to the plaintiffs' motion. On June 6, 1997, Scott filed a motion for judgment.

On June 24, 1997, the court granted Scott's motion for judgment. On September 15, 1997, the court denied the plaintiffs' motion to reopen the judgment and sustained Yale's objection to that motion. On November 26, 1997, the court denied another motion to reopen that was filed by the plaintiffs on October 23, 1997. The plaintiffs did not appeal from the court's decision.

Instead, the plaintiffs commenced the present action (*Gillum II*) in January, 1998. The plaintiffs alleged in their complaint that *Gillum I* "was dismissed before trial on the merits owing to a matter of form within the meaning of Connecticut General Statutes Section 52-592." On March 9, 1998, Scott filed a motion to dismiss the action. Yale filed a request to revise, seeking, inter alia, the basis for the plaintiffs' allegation that § 52-592 applied to the dispute. The court sustained the plaintiffs' objection to Yale's request to revise. The court scheduled a short calendar hearing on Scott's motion to dismiss in May, 1998. The court noted that under *Ruddock* v. *Burrowes*, 243 Conn. 569, 706 A.2d 967 (1998), it was required to conduct an evidentiary hearing to determine if § 52-592 permitted the plaintiffs to bring the present action. After conferring with counsel, the court scheduled an evidentiary hearing for July, 1998. The plaintiffs subsequently filed three separate motions for continu-

ance. The court granted a "final" continuance and scheduled the evidentiary hearing for November 23, 1998.

At the evidentiary hearing, the court first addressed the procedural posture of the dispute before it. The court noted that counsel for all parties had agreed to submit the dispute to the court on the basis of documentary, rather than testimonial, evidence. The court noted that based on the evidence before it,[4] it would be required to draw "essentially a legal conclusion" as to whether the statute permitted *Gillum II* to proceed. After an on-the-record discussion with the court, all counsel agreed that Scott's motion should be treated as a motion for summary judgment. The court permitted Yale to file its motion for summary judgment after the hearing. The court heard oral argument on the motions before it on December 21, 1998. On December 23, 1998, the court granted the defendants' motions for summary judgment. The court subsequently denied the plaintiffs' motion to reargue. This appeal followed.

"The standard of review of a trial court's decision to grant summary judgment is well established. [W]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict

---

[4] The court took judicial notice of the court file for *Gillum I*. The court also received the deposition testimony of the plaintiffs' counsel. In addition to other exhibits, the plaintiffs' counsel submitted a computerized calendar sheet reflecting the appointments of the plaintiffs' counsel on the date he missed the pretrial to demonstrate that the pretrial was not included on his calendar. The parties also stipulated to relevant facts. The plaintiffs' counsel did not offer any testimonial evidence in addition to his deposition transcript. The defendants did not challenge the plaintiff's evidence.

on the same facts." (Citation omitted; internal quotation marks omitted.) *Sherwood* v. *Danbury Hospital,* 252 Conn. 193, 201, 746 A.2d 730 (2000). "Where the trial court is presented with undisputed facts, as it was here, our review of its conclusions is plenary, as 'we must determine whether the court's conclusions are legally and logically correct . . . .' " (Citations omitted.) *Raynor* v. *Hickock Realty Corp.,* 61 Conn. App. 234, 237, 763 A.2d 54 (2000).

General Statutes § 52-592,[5] the accidental failure of suit statute, allows a plaintiff to commence a new action for the same cause, within one year, if a prior action failed "to be tried on its merits . . . for any matter of form . . . ." The statute is considered a "saving statute" because it permits plaintiffs to commence those causes of action to which it applies after the tolling of the applicable statute of limitation. Our Supreme Court, in *Ruddock* v. *Burrowes,* supra, 243 Conn. 569, had occasion to consider whether a disciplinary dismissal properly may be characterized as a dismissal "for any matter of form" for purposes of obtaining relief pursuant to § 52-592. The court concluded that whether the dismissal of a prior proceeding permitted a plaintiff recourse to the statute "depends upon the nature and the extent of the conduct that led to the disciplinary dismissal." Id., 570.

---

[5] General Statutes § 52-592 (a) provides in relevant part: "If any action, commenced within the time limited by law, has failed one or more times to be tried on its merits because of insufficient service or return of the writ due to unavoidable accident or the default or neglect of the officer to whom it was committed, or because the action has been dismissed for want of jurisdiction, or the action has been otherwise avoided or defeated by the death of a party or for any matter of form; or if, in any such action after a verdict for the plaintiff, the judgment has been set aside, or if a judgment of nonsuit has been rendered or a judgment for the plaintiff reversed, the plaintiff, or, if the plaintiff is dead and the action by law survives, his executor or administrator, may commence a new action . . . for the same cause at any time within one year after the determination of the original action or after the reversal of the judgment."

The trial court, pursuant to Practice Book § 251, now § 14-3, dismissed the original action in *Ruddock* after the plaintiffs had failed to attend a scheduled pretrial conference before the court. *Ruddock* v. *Burrowes,* supra, 243 Conn. 570–71. The plaintiffs in that case had filed a motion for reconsideration that represented that a car accident had delayed the plaintiffs' counsel and that he had made efforts to communicate the cause of his delay to court personnel. Id., 571. The court reaffirmed its judgment of dismissal. Id.

The *Ruddock* plaintiffs commenced a new action under § 52-592, alleging the same cause of action. Id. The defendants filed a motion for summary judgment on the ground that § 52-592 did not apply to actions terminated by a disciplinary dismissal. Id., 572. The trial court granted the defendants' motion, as a matter of law, concluding that the nature of the disciplinary dismissal precluded application of the statute, regardless of the proffered reasons for the cause of the dismissal. Id. We affirmed the trial court's judgment, and the Supreme Court reversed our judgment and remanded the matter for further proceedings. Id., 573.

The Supreme Court stated that although it is required to construe the statute broadly, given its remedial nature, it should not construe it so broadly as to hamper a trial court's ability to manage its docket by dismissing cases for appropriate transgressions. Id., 575. The court concluded that it is appropriate to weigh the egregiousness of the conduct that caused the disciplinary dismissal when determining whether to apply the statute to a particular action. The court noted that "[w]hether the statute applies cannot be decided in a factual vacuum. To enable a plaintiff to meet the burden of establishing the right to avail himself or herself of the statute, a plaintiff must be afforded an opportunity to make a factual showing that the prior dismissal was 'a matter of form' in the sense that the plaintiff's noncompliance with a court order occurred in circum-

stances such as mistake, inadvertence or excusable neglect." Id., 576–77. The court provided additional guidance by explaining that failing to appear at scheduled hearings might constitute egregious conduct if a party exhibits a pattern of behavior that interferes with proper judicial management of cases.[6] Given that discussion, it is appropriate to consider each case along a continuum; at one extreme are dismissals for mistake or inadvertence, at the other extreme are dismissals for serious misconduct or a series of cumulative transgressions.

Mindful of those considerations, we analyze the dismissal in the present case.[7] The record supports the court's conclusion that *Gillum I* was beset by "lackadaisical behavior by the plaintiffs at every turn." The court aptly characterized *Gillum I* as "the poster child for dilatory behavior dismissals." In addition to the fact that the plaintiffs' conduct occasioned three dismissals, which hampered the movement of the case toward a resolution, the plaintiffs further hindered the progress of the case by continually running deadlines to their limits before filing motions to reopen or complying

[6] "A trial court, for example, might find an attorney's misconduct to be egregious if the attorney represented that his nonappearance was caused by difficulties with his car without disclosing that he had ready access to alternative transportation. A trial court might make a similar finding if, in one case, the attorney repeatedly, and without credible excuse, delayed scheduled court proceedings. Nonappearances that interfere with proper judicial management of cases, and cause serious inconvenience to the court and to opposing parties, are categorically different from a mere failure to respond to a notice of dormancy pursuant to Practice Book § 251 . . . or a single failure to appear, in a timely fashion, after a luncheon recess." (Citation omitted.) *Ruddock* v. *Burrowes*, supra, 243 Conn. 576 n.12.

[7] The plaintiffs claim in their brief that the court improperly relied on the plaintiffs' conduct in the present case, *Gillum II*, in reaching its decision. While the court did refer to a similar pattern of delay by the plaintiffs in *Gillum II*, we conclude that the court clearly predicated its decision on the plaintiffs' conduct in *Gillum I*. We affirm the court's judgment solely on the basis of its conclusions of law, which it based on the undisputed procedural history of *Gillum I*.

with court orders. Even after the third dismissal, the plaintiffs' counsel failed to communicate promptly to the court an explanation for his conduct. Additionally, the plaintiffs' counsel permitted months to elapse before attempting to reopen the case. That pattern of conduct, evidenced by the court file, far surpasses mistake, inadvertence or excusable neglect. See *Skibeck* v. *Avon*, 24 Conn. App. 239, 587 A.2d 166 (pattern of repeated dismissals evidence of egregious pattern of behavior that was never meant to be saved by provisions of § 52-592), cert. denied, 219 Conn. 912, 593 A.2d 138 (1991).

The plaintiffs argue that the court improperly resolved questions of fact when reaching its conclusion. We are not persuaded. The Supreme Court in *Ruddock* explained that a court, during its factual inquiry into the nature of the dismissal, should consider any "claimed justification" for a party's failure to comply with court orders. *Ruddock* v. *Burrowes*, supra, 243 Conn. 578. The court in *Ruddock* remanded that case for further factual determinations because the resolution required a factual determination, given the circumstances of that case. The plaintiffs in *Ruddock* had filed an affidavit that again raised "the factual issue of mistake, inadvertence or excusable neglect" that they raised in their earlier motion for reconsideration. Id., 572. The present case is distinguishable because although the plaintiffs' counsel proffered an explanation as to why he missed the scheduled pretrial conference, the court did not base its decision on the circumstances of that one dismissal or the merit of counsel's proffered explanation, but on the plaintiffs' pattern of conduct throughout the duration of *Gillum I*.

Even if the court had based its decision solely on the third dismissal in *Gillum I*, the fact that the plaintiffs' counsel offered an explanation as to why he missed that conference did not raise a factual issue that precluded

summary judgment in the defendants' favor. The plaintiffs' counsel offered the court a justification for his conduct during the evidentiary hearing in the present case, *Gillum II*, not immediately following the missed pretrial or in the motion to reopen the dismissal. The Supreme Court in *Ruddock* noted that one incident of unjustifiable misconduct, such as missing a conference and failing to offer the court a credible excuse for such behavior, could suffice to preclude application of the statute. *Ruddock* v. *Burrowes*, supra, 243 Conn. 576 n.12.

The time line in and the substance of the court file from *Gillum I* speak for themselves. The explanations of counsel's conduct, set forth in his deposition transcript, did not preclude summary judgment in favor of the defendants. Even when accepting his testimony as true, as the court is required to do when ruling on a summary judgment motion, that did not remedy or excuse the years of what the plaintiffs' counsel himself characterized as "a pattern of lackadaisicalness." In fact, the defendants did not challenge any of the plaintiffs' evidence before the court. They did not need to. The egregious misconduct of the plaintiffs' counsel is evidenced by the undisputed pattern of dilatory conduct that justified the dismissals and the lack of any diligent steps to further prosecute the action that the plaintiffs had commenced. The plaintiffs argue that a jury should have been entitled to resolve the issue of whether the conduct should be considered to be a "matter of form" for purposes of the statute. That determination, however, is a legal issue that the court properly resolved. The defendants presented evidence in support of their motion for summary judgment. The plaintiffs failed to demonstrate the existence of an issue of fact. As in *Skibeck*, a case involving facts very similar to those in the case before us, "the parties do not dispute the procedural facts that have brought this case before us.

Thus, we need review only whether the [defendants were] entitled to judgment in [their] favor as a matter of law." *Skibeck* v. *Avon*, supra, 24 Conn. App. 242. Interestingly, despite *Skibeck*'s direct application to the facts presented in this case, the plaintiffs failed to cite to *Skibeck* in either of their briefs to this court. Given the legal issue before it, and based on the uncontradicted factual record of *Gillum I*, the trial court in this case logically concluded, as a matter of law, that the court in *Gillum I* did not dismiss that case as a "matter of form."

The plaintiffs also assert that the court improperly failed to consider the remedial nature of the statute in reaching its conclusion. As should be abundantly clear from our discussion, the remedial nature of the statute does not require that all dismissals be considered to be a "matter of form." As our Supreme Court noted, despite its remedial nature, § 52-592 (a) should not "be read so broadly or interpreted so expansively that the plain language of the statute, or this court's relatively recent construction of that language, should be ignored." *Peabody N.E., Inc.* v. *Dept. of Transportation*, 250 Conn. 105, 126, 735 A.2d 782 (1999).

As *Ruddock* clarifies, § 52-592 (a) does not guarantee that all cases will receive adjudication on their merits. Construction of the statute should not be so liberal as to render a statute of limitations for bringing a cause of action "virtually meaningless." *Skibeck* v. *Avon*, supra, 24 Conn. App. 243. Practice Book § 14-3 reflects the judicial branch's interest in having counsel prosecute actions with reasonable diligence. Judges, faced with case flow management concerns, must "enforce the pace of litigation coming before the court, rather than allowing the parties to do so." (Internal quotation marks omitted.) *Gionfrido* v. *Wharf Realty, Inc.*, 193 Conn. 28, 33, 474 A.2d 787 (1984). This case directly implicates the axiom that "[o]ur judicial system cannot be controlled by the litigants and cases cannot be

allowed to drift aimlessly through the system." (Internal quotation marks omitted.) Id., 32–33; see also *Farmers & Mechanics Savings Bank* v. *Sullivan*, 216 Conn. 341, 366, 579 A.2d 1054 (1990) (*Callahan, J.*, dissenting); *Jaconski* v. *AMF, Inc.*, 208 Conn. 230, 232–33, 543 A.2d 728 (1988).

Where, as here, the hallmark of counsel's representation is a pattern of repeated delay, occasioning the utilization of judicial resources to enforce proper prosecution of cases brought before the court and necessitating several dismissals, our strong policy favoring a trial on the merits loses its applicability. The underlying factual dispute in this case involves events occurring in early 1989. Nearly nine years later, the plaintiffs still had not managed to prosecute their action. The court saved *Gillum I* from dismissals twice. As we noted in *Skibeck*, "[t]o allow this action to continue at this time would defeat the basic purpose of the public policy that is inherent in statutes of limitation, i.e., to promote finality in the litigation process." *Skibeck* v. *Avon*, supra, 24 Conn. App. 243.

The court properly concluded, as a matter of law, that the plaintiffs could not state a cause of action under § 52-592.

The judgment is affirmed.

In this opinion the other judges concurred.