[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION 
 RE MOTION FOR SUMMARY JUDGMENT (No. 106)
The issue presented by the motion for summary judgment now before the court is whether the plaintiff, Karen Eberhardt, can bring this action under the accidental failure of suit statute, Conn. Gen. Stat. §52-592. The detailed procedural history and facts that follow are necessary to the court's consideration of that issue.
Eberhardt alleges that on March 15, 1996, she was injured in a motor vehicle accident. She claims that her injuries were caused by the negligence of the defendant, Lauren Conway.
Eberhardt commenced her original action against Conway by service of process on April 13, 1996. Eberhardt v. Conway, No. 391848 (Eberhardt I). On April 29, 1996, Conway served her discovery requests. On May 10, 1996, Eberhardt moved to extend the time within which to respond to those requests to June 29, 1996. That motion was not acted on by the court. Instead, on June 11, 1996, Eberhardt filed a notice of compliance stating that, "All questions have been answered."
Compliance was not, however, complete. On August 14, 1998, Conway filed a motion for order of compliance. On September 8, 1998, the court (Licari, J.) entered the following order: "Compliance is ordered by Nov. 16th, 1998. If the moving party has not received compliance by that date, it may file an additional motion attesting to that fact and referencing this order, at which time default/nonsuit will be granted." Eberhardt subsequently filed a disclosure of expert on September 29, 1998, but her compliance with the requested discovery remained partial.
On January 12, 1999, Conway filed a motion for nonsuit, asserting that compliance with discovery remained incomplete. On May 24, 1999, the motion was heard by the court (Jones, J.). Eberhardt represented that, "I think we do have this resolved. Part of my difficulty in getting Dr. Syed's records was that he's not — he is non-compliant. And under threat of subpoena, I think I have him in agreement of what we need." By agreement of the parties, the court thereupon entered the following order: "Denied with the understanding that plaintiff's counsel will effect compliance within 30 days."
Compliance, however, remained incomplete. On September 27, 1999, Conway filed a second motion for nonsuit. Eberhardt filed nothing in response. On November 10, 1999, the court (Silbert, J.) entered the following order: "Nonsuit Granted." Eberhardt neither appealed this decision nor moved to reopen the nonsuit. CT Page 13328
Certain other events, not reflected in the file of Eberhardt I but not disputed by the parties, must also be mentioned. Eberhardt provided Conway with numerous supplemental (but, alas, partial) compliances following her June 11, 1996 notice of compliance. These supplemental compliances occurred on July 13, 1998; September 23, 1998; February 19, 1999; February 24, 1999; May 20, 1999; June 9, 1999; October 21, 1999; November 10, 1999; and May 12, 2000. In addition, on May 31, 2000, Conway prepared a written motion for continuance of trial and served it on Eberhardt. The need for this motion was less than obvious, since the motion duly recited the fact that nonsuit had been granted by the court. For reasons not reflected in the record, the motion for continuance was never filed.
On October 24, 2000, Eberhardt commenced the present case (EberhardtII) by service of process. On March 27, 2001, Conway filed the motion for summary judgment now before the court. The motion was heard on September 17, 2001.
The Appellate Court has recently explained the legal analysis that must control the court's decision in this case:
 General Statutes § 52-592, the accidental failure of suit statute, allows a plaintiff to commence a new action for the same cause, within one year, if a prior action failed "to be tried on its merits . . . for any matter of form. . . ." The statute is considered a "saving statute" because it permits plaintiffs to commence those causes of action to which it applies after the tolling of the applicable statute of limitation. Our Supreme Court, in Ruddock v. Burrowes . . . 243 Conn. 569, [706 A.2d 967
(1998)], had occasion to consider whether a disciplinary dismissal properly may be characterized as a dismissal "for any matter of form" for purposes of obtaining relief pursuant to § 52-592. The court concluded that whether the dismissal of a prior proceeding permitted a plaintiff recourse to the statute "depends upon the nature and the extent of the conduct that led to the disciplinary dismissal." Id., 570.
. . .
 The Supreme Court stated that although it is required to construe the statute broadly, given its remedial nature, it should not construe it so broadly CT Page 13329 as to hamper a trial court's ability to manage its docket by dismissing cases for appropriate transgressions. Id., 575. The court concluded that it is appropriate to weigh the egregiousness of the conduct that caused the disciplinary dismissal when determining whether to apply the statute to a particular action. The court noted that, "[w]hether the statute applies cannot be decided in a factual vacuum. To enable a plaintiff to meet the burden of establishing the right to avail himself or herself of the statute, a plaintiff must be afforded an opportunity to make a factual showing that the prior dismissal was "a matter of form' in the sense that the plaintiff's non-compliance with a court order occurred in circumstances such as mistake, inadvertence or excusable neglect." Id., 576-77. The court provided additional guidance by explaining that failure to appear at scheduled hearings might constitute egregious conduct if a party exhibits a pattern of behavior that interferes with proper judicial management of cases. Given that discussion, it is appropriate to consider each case along a continuum; at one extreme are dismissals for mistake or inadvertence, at the other extreme are dismissals for serious misconduct or a series of cumulative transgressions.
Gillum v. Yale University, 62 Conn. App. 775, 781-83, 773 A.2d 986,cert. denied, 256 Conn. 929 (2001). (Footnotes omitted.)
The record of Eberhardt I must be analyzed in light of these considerations. That record establishes that Eberhardt I was dismissed for "a series of cumulative transgressions." The dismissal of EberhardtI was different from the dismissals in Ruddock and Gillum in that it resulted from incomplete compliance with discovery rather than failure to appear in court. In either event, however, the question framed by our case law is whether "a party exhibits a pattern of behavior that interferes with proper judicial management of cases." Gillum v. Yale University,supra, 62 Conn. App. at 783. Unhappily, Eberhardt exhibited just such a pattern of behavior in Eberhardt I.
Eberhardt's central transgression in Eberhardt I was not her failure to comply with requested discovery. There are, on occasion, legitimate reasons for a party's inability to comply with discovery, especially when that discovery involves the gathering of documents in the hands of third parties. Trial courts, when duly informed of such difficulty, have ample CT Page 13330 flexibility to issue orders that respond to the exigencies of the situation and accommodate the needs of the parties. The problem inEberhardt I is that Eberhardt continually misled the trial court and then proceeded to disobey the orders of the court without bothering to inform the court of any circumstances requiring a modification of those orders. Trial judges do not like to dismiss cases, but the black robe comes unaccompanied by a crystal ball, and judges cannot be expected to be mind readers.
The court file in Eberhardt I speaks for itself Eberhardt filed a notice of compliance on June 11, 1996, stating "All questions have been answered." Compliance, however, remained incomplete. Eberhardt ignored the September 8, 1998 order of Licari, J. that compliance occur by November 16, 1998. She subsequently ignored the May 24, 1999 "understanding" of Jones, J. — an "understanding" that she expressly created — that her "counsel will effect compliance within 30 days." This was a serious transgression in and of itself Eberhardt knew that Jones, J. had denied Conway's motion for nonsuit based on just this "understanding." When the predicate for that "understanding" — compliance within 30 days — ceased to exist, Eberhardt had an affirmative responsibility to so inform the court. She did nothing of the kind. When Conway filed her second motion for nonsuit on September 27, 1999, Eberhardt did not even bother to respond. When that motion was granted by Silbert, J. on November 10, 1999, Eberhardt did not trouble herself to either appeal or move to reopen. She instead waited eleven months and two weeks before filing Eberhardt II.
This case directly implicates the axiom that "[o]ur judicial system cannot be controlled by the litigants and cases cannot be allowed to drift aimlessly through the system." Gionfrido v. Wharf Realty, Inc.,193 Conn. 28, 32-33, 474 A.2d 787 (1984). Where, as here, the hallmark of counsel's representation is a pattern of misleading representations to the court and repeated failure to obey court orders, combined with a marked disinclination to inform the court of any difficulties that might require modification of those orders, "our strong policy favoring a trial on the merits loses its applicability." Gillum v. Yale University,supra, 62 Conn. App. at 787. "To allow this action to continue at this time would defeat the basic purpose of the public policy that is inherent in statutes of limitation, i.e., to promote finality in the litigation process." Skibeck v. Avon, 24 Conn. App. 239, 243, 587 A.2d 166, cert.denied, 219 Conn. 912, 593 A.2d 138 (1991).
Given the uncontested record of this case, Eberhardt is unable, as a matter of law, to state a cause of action under § 52-592.
The motion for summary judgment is granted. CT Page 13331
Jon C. Blue Judge of the Superior Court