ANTHONY J. PELLECCHIA, ADMINISTRATOR
(ESTATE OF ANTHONY E. PELLECCHIA),
ET AL. *v.* TOWN OF
KILLINGLY ET AL.*

Superior Court, Complex Litigation Docket at Hartford
File No. CV-11-6023280-S

---

* Affirmed. *Pellecchia* v. *Killingly*, 147 Conn. App. 299, 80 A.3d 931 (2013).

Memorandum filed March 19, 2012

*Jason L. McCoy,* for the plaintiff.

*Scott R. Ouellette,* for the named defendant et al.

BRIGHT, J.

# I

## INTRODUCTION

This matter came before the court on the defendants' Town of Killingly, Anthony Shippee, and David Sabourin (Town defendants) motion to dismiss for lack of subject matter jurisdiction. The Town defendants argue that the court is without subject matter jurisdiction over this action because it was not commenced within the two year statute of limitations period for wrongful death

claims, as required by General Statutes § 52-555. The Town defendants also assert that, in this matter (2011 action), the plaintiff may not rely on the "accidental failure of suit statute," General Statutes § 52-592, because a prior action commenced by the plaintiff, Docket No. HHD X04-CV-08-6003273 S (2008 action), concerning the same incident, was dismissed for wilful failure to follow clear orders of the court, and thus did not fail by way of mistake, inadvertence or excusable neglect. The plaintiff claims that a disciplinary dismissal is not categorically excluded from the accidental failure of suit statute, and in light of the policy preference of resolving a case on its merits, this court ought not to preclude him from bringing this action anew against the Town defendants.

## II

## BACKGROUND

This matter arises from a July 29, 2006 accident in which the decedent died when the motorcycle he was operating came into contact with downed, energized electrical lines. This action, the 2011 action, was commenced on June 1, 2011, nearly five years after the alleged accident.

The court repeats its summary of the procedural background in the 2008 action from its December 17, 2009 memorandum of decision (December, 2009 decision) in that action in which the Town defendants' motion for nonsuit against the plaintiff was granted, pages 1–5: "The plaintiff commenced this action with the service of his complaint, dated May 30, 2008. . . . On June 19, 2008, the Town defendants filed a request to revise the complaint (#102). On August 14, 2008, the Town defendants filed a motion for nonsuit, seeking a nonsuit against the plaintiff for failure to revise his complaint within the time allowed by the Rules of Practice (#107) (first Town motion for nonsuit). On August

18, 2008, defendants Connecticut Light and Power Company (CL&P), Northeast Utilities (NU), and Northeast Utilities Service Company (NUSC) (collectively 'CL&P defendants') also filed a request to revise the complaint (#105) (CL&P request to revise).

"The plaintiff requested a thirty day extension of time to respond to the CL&P request to revise (#110). The plaintiff also moved for an extension of time, until September 25, 2008, to respond to the request to revise the complaint which was filed by the Town defendants. The court (*Sferrazza, J.*) granted this second motion for extension of time on September 8, 2008 (#111). Thereafter, [the] plaintiff neither timely objected to the requests to revise nor did he revise his complaint in conformance with either request to revise.

"On October 28, 2008, the CL&P defendants filed a motion for nonsuit against the plaintiff for his failure to file a revised complaint in accordance with their request to revise (#133) (CL&P motion for nonsuit). No objection to the CL&P motion for nonsuit was filed by the plaintiff.[1] On November 18, 2008, the plaintiff filed untimely objections to the CL&P request to revise (#146).

"On November 20, 2008, the court issued an order concerning the CL&P motion for nonsuit, as follows: 'Pursuant to P.B. § 10-37,[2] the time by which the plaintiff was to file any objections to the defendants CL&P, NU, and NUSC's requests to revise elapsed. The plaintiff's

---

[1] Counsel for the parties attended a status conference with the court on November 6, 2008, after which a scheduling order was issued. Among the deadlines in that order, the pleadings were to be closed by July 1, 2009.

[2] Practice Book § 10-37 (a) provides in relevant part that "such request shall be deemed to have been automatically granted by the judicial authority on the date of filing and shall be complied with by the party to whom it is directed within thirty days of the date of filing the same, unless within thirty days of such filing the party to whom it is directed shall file objection thereto."

objections, dated November 18, 2008 (#146), are untimely. Accordingly, the requests are deemed to have been automatically granted. See P.B. § 10-37. Plaintiff shall file a revised complaint within 15 days of the date of this order.' See #133. Thus, instead of ordering a nonsuit at that time, the court afforded the plaintiff an additional extension of fifteen days, until December 5, 2008, to file a revised complaint in compliance with the CL&P request to revise.

"Similarly, on November 24, 2008, the court issued an order concerning the first Town motion for nonsuit, as follows: 'Pursuant to P.B. § 10-37, the time by which the plaintiff was to file any objections to the defendants' (Town of Killingly, Shippee, and Sabourin) requests to revise elapsed. Accordingly, the requests are deemed to have been automatically granted. Plaintiff shall file a revised complaint by December 5, 2008.' See #107.

"Rather than filing such a revised complaint in compliance with the court's orders, on December 4, 2008, the plaintiff filed a request for leave to amend complaint (#157), with a proposed amended complaint. The CL&P defendants filed an objection to the request for leave to amend on December 19, 2008 (#159), since the amended complaint did not incorporate most of the revisions sought in the CL&P request to revise. On December 24, 2009, the Town defendants filed a motion for judgment of dismissal (#161), based on the plaintiff's failure to revise his complaint in accordance with the court's November 24, 2008 order on their first motion for nonsuit (#107). The court sustained the CL&P defendants' objection to the proposed amended complaint by order dated January 20, 2009.

"On February 10, 2009, the court issued an order concerning the Town defendants' motion for judgment of dismissal (#161), which stated: 'Denied without prejudice. The motion does not specify in what way the proposed amended complaint (#157) did not comply.'

"On February 23, 2009, the plaintiff filed an 'objection' to the CL&P defendants' objection to the request for leave to amend and to the Town defendants' motion for judgment of dismissal (#186), which ignored the court's January 20, 2009 and February 10, 2009 orders, and asserted that the amended complaint complied with the court's November 20, 2008 order. By order dated February 27, 2009, the court found the plaintiff's belated "objection" to be moot.

"The Town defendants filed a motion to strike, dated April 21, 2009 (#277), which was addressed to counts fourteen, fifteen, and nineteen of the plaintiff's December, 2008 proposed amended complaint.

"Thereafter, the court considered the CL&P defendants' motion for dismissal with prejudice, or alternatively, for an order of nonsuit (#182) and issued its memorandum of decision on May 13, 2009 (#242), granting a nonsuit as to the claims against the CL&P defendants. Therein, at pages 5 and 12, the court stated that the plaintiff's proposed amended complaint, filed on December 4, 2008 (#157), was not operative.

"At the hearing which was held on June 12, 2009, concerning the Town defendants' motion to strike, which neither the plaintiff nor his counsel attended, the court reiterated that the plaintiff's December, 2008 proposed amended complaint was not operative, and, therefore, there was no complaint to strike.

"On September 1, 2009, the court issued an order sustaining the Town defendants' June 19, 2009 objection (#257) to the plaintiff's amended revised substitute complaint, dated June 5, 2009 (#249). Once again, the plaintiff had presented an amendment which did not incorporate the revisions requested by the Town defendants in their June, 2008 request to revise (#107), and which violated the court's November 24, 2008 order

concerning the required revisions (#107). By memorandum of decision, dated October 23, 2009 (#313), the court denied the plaintiff's motion for reconsideration of the September 1, 2009 order." [*Pellecchia* v. *Connecticut Light & Power Co.*, Superior Court, judicial district of Hartford, Docket No. HHD X04-CV-08-6003273 S (December 17, 2009) (*Shapiro, J.*).]

At page 7 of the December, 2009 decision, the court stated, "The plaintiff thus continues to ignore the clear language of the court's order (#107), in which the plaintiff was explicitly informed by the court that, in accordance with the Practice Book, the Town defendants' requests to revise the complaint were '*deemed to have been automatically granted.*' . . . In addition, the court cited Practice Book § 10-37, quoted above, which also expressly so provides. There is no reasonable basis for the plaintiff to assert that he complied with the court's order in his December, 2008 proposed amended complaint.

"Although the plaintiff was afforded extensions of time to file an appropriately revised complaint, he did not do so. The court already has found, in its May 13, 2009 decision (#242), that the plaintiff's continued failure to comply with the court's clear orders evidences a wilful failure to do so. His defiance of the court's orders continues." (Emphasis in original.)

At page 11 of the December, 2009 decision, the court stated, "More than [one] year after the plaintiff was ordered to revise his complaint in conformance with the Town defendants' request to revise, he steadfastly refuses to do so."

At page 13 of the December, 2009 decision, the court stated: "Here, the plaintiff's continued failure to properly revise his complaint in compliance with the Practice Book and the court's orders evidences a lack of due regard to necessary rules of procedure. . . . The

plaintiff may not be permitted to ignore and not comply with the court's orders and the Practice Book. In so doing, the progress of the pleadings has been inexcusably delayed for over a year. The return day in this matter was June 17, 2008. Eighteen months later, as a result of the plaintiff's noncompliance, there is still no properly revised complaint, and no progress towards closing the pleadings. Allowing this noncompliance would negate Practice Book § 10-37." (Citation omitted.)

Thus, a nonsuit was entered as to the plaintiff's claims against the Town defendants on December 17, 2009 in the 2008 action. The plaintiff then filed a motion to open nonsuit in the 2008 action (#347) and at the same time filed an appeal of the nonsuit (#345). The Town defendants filed their objection to the motion to open (#350). No request for adjudication was ever filed for that motion to open. On February 1, 2011, the Appellate Court affirmed the nonsuits entered by this court in favor of the CL&P defendants and the Town defendants. See *Pellecchia* v. *Connecticut Light & Power Co.*, 126 Conn. App. 903, 12 A.3d 641 (2011).

This 2011 action was commenced against the Town defendants on June 1, 2011, nearly five years after the alleged accident. Unless the accidental failure of suit statute, § 52-592 (a), applies, the plaintiff's claims against the Town defendants are time barred under § 52-555.

## III

## LEGAL STANDARD

"Once the question of lack of jurisdiction of a court is raised, [it] must be disposed of no matter in what form it is presented. . . . The court must fully resolve it before proceeding further with the case." (Internal quotation marks omitted.) *St. Paul Travelers Cos.* v.

*Kuehl*, 299 Conn. 800, 816, 12 A.3d 852 (2011). "[A]s a general matter, a motion to dismiss is not the proper procedural instrument for challenging the applicability of § 52-592 (a), the proper challenge being by way of a properly pleaded special defense . . . ." *LaBow* v. *LaBow*, 85 Conn. App. 746, 750, 858 A.2d 882 (2004), cert. denied, 273 Conn. 906, 868 A.2d 747 (2005).

However, our Supreme Court has held that a trial court may properly consider a defendant's challenge to a plaintiff's claims brought pursuant to § 52-592 (a) so long as the plaintiff is afforded an opportunity to make a factual showing that the prior dismissal was a matter of form. In discussing the type of dismissal that is at issue in this case, the Supreme Court has stated that "[i]n concluding that even disciplinary dismissals are not excluded categorically from the relief afforded by § 52-592 (a), we have noted the fact-sensitive nature of the inquiry and held that, [t]o enable a plaintiff to meet the burden of establishing the right to avail himself or herself of the statute, a plaintiff must be afforded an opportunity to make a factual showing that the prior dismissal was a matter of form in the sense that the plaintiff's noncompliance with a court order occurred in circumstances such as *mistake, inadvertence or excusable neglect.* . . . Indeed, even in the disciplinary context, only egregious conduct will bar recourse to § 52-592." (Citation omitted; emphasis in original; footnote omitted; internal quotation marks omitted.) *Plante* v. *Charlotte Hungerford Hospital*, 300 Conn. 33, 50–51, 12 A.3d 885 (2011).

In *Tellar* v. *Abbott Laboratories, Inc.*, 114 Conn. App. 244, 251, 969 A.2d 210 (2009), the Appellate Court provided an overview of the law regarding § 52-592 (a). In so doing, it stated, "[i]n *Ruddock* v. *Burrowes*, [243 Conn. 569, 706 A.2d 967 (1998)], our Supreme Court considered whether a disciplinary dismissal may be characterized as a dismissal 'for any matter of form'

for purposes of obtaining relief pursuant to § 52-592. The court concluded that 'disciplinary dismissals are not excluded categorically from the relief afforded by § 52-592 (a)'; id., 576; rather, whether the dismissal of a prior proceeding permitted a plaintiff recourse to the statute 'depends upon the nature and the extent of the conduct that led to the disciplinary dismissal.' Id., 570. Accordingly, the court instructed that the egregiousness of the conduct precipitating the dismissal must be examined in determining whether § 52-592 applies in a given instance. It stated: 'Disciplinary dismissals do not, in all cases, demonstrate the occurrence of misconduct so egregious as to bar recourse to § 52-592. . . . In applying that precedent, this court in *Gillum* v. *Yale University*, 62 Conn. App. 775, 773 A.2d 986, cert. denied, 256 Conn. 929, 776 A.2d 1146 (2001), explained that 'it is appropriate to consider each case along a continuum; at one extreme are dismissals for mistake or inadvertence, at the other extreme are dismissals for serious misconduct or a series of cumulative transgressions.' Id., 783." (Citation omitted.) *Tellar* v. *Abbott Laboratories, Inc.*, supra, 251.

## IV

## DISCUSSION

As stated above, this matter is before this court concerning the Town defendants' motion to dismiss (#111) the 2011 action for lack of subject matter jurisdiction. The Town defendants argue: (1) that the court is without subject matter jurisdiction because this action was not commenced within the two year statute of limitations period for wrongful death claims set forth in § 52-555; and (2) that the accidental failure of suit statute, § 52-592 (a), does not apply because the judgment of nonsuit entered in the 2008 action was a disciplinary dismissal for wilful failure to comply with court orders.

The plaintiff does not dispute that this action is untimely if not saved by § 52-592 (a). "The wrongful death statute; General Statutes § 52-555; is the sole basis upon which an action that includes as an element of damages a person's death or its consequences can be brought." *Lynn* v. *Haybuster Mfg., Inc.*, 226 Conn. 282, 295, 627 A.2d 1288 (1993). "[T]he [time] limitation contained within § 52-555 is a jurisdictional prerequisite which cannot be waived and which must be met in order to maintain an action under § 52-555. . . . Thus, § 52-555 is not to be treated as an ordinary statute of limitation[s] . . . . Rather, it is a limitation on the liability itself, and not of the remedy alone. . . . Accordingly, the right to bring a wrongful death claim pursuant to § 52-555 exists only during the statutorily prescribed time period, and expires thereafter." (Citations omitted; internal quotation marks omitted.) *Greco* v. *United Technologies Corp.*, 277 Conn. 337, 349–50, 890 A.2d 1269 (2006). All of the plaintiff's claims against the Town defendants arise from the death of the plaintiff's decedent. Although he has styled the claims as "negligence" claims, they are all subject to the two year statute of limitations set forth in § 52-555, as the claims seek damages arising from the death of the plaintiff's decedent.

As stated above, this 2011 action was commenced against the Town defendants nearly five years after the alleged accident. Thus, unless the accidental failure of suit statute applies, the plaintiff's claims against the Town defendants are time barred under § 52-555. In fact, the plaintiff's position (#122) as to the Town defendants' motion to dismiss is based entirely on the interplay between §§ 52-555 and 52-592 (a). In particular, the plaintiff argues that the court does have jurisdiction as the original 2008 action was timely filed within the two year statute of limitations, and that this action, the

2011 action, was timely filed within one year of the dismissal of the 2008 action.[3]

On December 15, 2011, the court held a hearing on the Town defendants' motion to dismiss. At that hearing, the plaintiff objected to the defendants' motion on the ground that it was the improper procedural vehicle to challenge the applicability of § 52-592 (a). The court agreed with the plaintiff and informed all parties that it would follow the procedure set forth in *Plante* v. *Charlotte Hungerford Hospital*, supra, 300 Conn. 33, whereby it would bifurcate the action and hear evidence and argument on the claim that the action was saved by § 52-592 (a) separately from the underlying tort action.

Thereafter, an evidentiary hearing was held on January 18, 2012, to give the plaintiff an opportunity to meet his burden to prove that the dismissal of the 2008 action was the result of the plaintiff's "mistake, inadvertence or excusable neglect."[4] The plaintiff presented one witness, Attorney Jason L. McCoy, at the hearing. Attorney

[3] The plaintiff's opposition at page 2 states as follows: "The Following are the laws, that Apply to the Plaintiff's Actions for Injuries Resulting in Death, which the plaintiff is make pursuant to CT. Gen. Stat. Section §§ 52-555 Actions for injuries resulting in death, § 52-592 Accidental Failure of Suit; Allowance of a New Action and § 52-584 Limitation of action for injury to person or property (§ 52-572h).

"There is no dispute that those statutes apply to this case. That service was made timely in the first case and in this case timely, within two years and within a year of the dismissal. That Mr. Pellecchia was killed, and this falls within ac That Mr. Pellecchia claim was brought timely in the initial action." All spelling and grammatical mistakes are taken verbatim from the plaintiff's memorandum.

[4] In his brief, the plaintiff argues that the court should look to *Burgess* v. *Vanguard Ins. Co.*, 192 Conn. 124, 470 A.2d 244 (1984), for guidance on the proper interpretation of § 52-592 (a). A review of *Burgess* shows that the issue in that case was whether the trial court's ruling on the plaintiff's *timely filed* objection to the defendant's request to revise was proper. The defendant had filed a request to revise the fourth count, seeking to have it separated into two separate counts. The court overruled the plaintiff's objection to the request to revise. Thereafter, the plaintiff declined to file a revised pleading and the defendant filed a motion for partial judgment of nonsuit. The court granted the defendant's motion for nonsuit and the plain-

McCoy was counsel of record for the plaintiff in the 2008 action.

When questioned about the 2008 action, Attorney McCoy testified that, with respect to the Town defendants' requests to revise, he was confused by the procedures set forth on the complex litigation docket. Specifically, Attorney McCoy testified that he was under the impression that he did not need to comply with the Practice Book with respect to responding to requests to revise, but rather thought that the court would not rule on the requests until a request for adjudication was filed. This assertion, however, is not supported by the facts.

The Town defendants' requests to revise were filed on June 18, 2008. On August 13, 2008, the Town defendants filed their first motion for nonsuit (#107) for failure to file a revised complaint. It was not until August 25, 2008, nearly two and one-half months after the requests were first filed, that the plaintiff filed his motion for extension of time (#111) to respond to said requests. On September 8, 2008, the court (*Sferrazza, J.*) granted the plaintiff's motion for extension of time and gave him until September 25, 2008, to respond. All of this occurred while the 2008 action was pending on the regular civil docket in the Tolland judicial district. Thus, as of September 8, 2008, the plaintiff's counsel knew that he had a deadline of September 25, 2008, to file a response to the Town defendants' requests to revise.

tiff appealed. The central issue in *Burgess* was the appropriateness of the trial court's ruling on the plaintiff's objection to the request to revise. No new action was filed pursuant to § 52-592 (a). Thus, *Burgess* provides no guidance regarding the appropriate interpretation of § 52-592 (a).

Furthermore, unlike in *Burgess*, here, the plaintiff failed to timely file objections to the Town defendants' request to revise. When those requests were deemed automatically granted, rather than allow a nonsuit to enter and then take an appeal, as the plaintiff in *Burgess* did, the plaintiff here repeatedly filed amended and or revised complaints that failed to comply with the court's orders. Consequently, *Burgess* is inapposite to this case.

On September 16, 2008, the parties received a notice informing all that the matter had been ordered transferred to the X04 complex litigation docket in Hartford pending any objections. The parties were informed that they had fifteen days to object to the transfer. In that same notice, the parties were informed that they should continue to file all other motions in the originating court until they receive notice that the matter has been transferred. The application to transfer to complex litigation (#119) was not granted until October 1, 2008, after the September 25, 2008 deadline by which the plaintiff had to file a response to the Town defendants' requests to revise. The physical files were not transferred from the Tolland Superior Court to the Hartford Superior Court until October 8, 2008. The case assignment notice informing all parties that the matter had been assigned to Judge Shapiro on the X04 complex litigation docket was not issued until October 11, 2008. The general case management order, wherein the request for adjudication procedure was explained, was not mailed to the parties until October 20, 2008.

At no point prior to October 1, 2008, were the parties governed by the complex litigation procedure. Thus, how or why the plaintiff would be confused by the request for adjudication procedure during this time is unclear to the court. The bottom line is that the plaintiff had failed to timely object to the defendants' request to revise before the 2008 action ever got to the complex litigation docket. Thus, Attorney McCoy's testimony that the transfer process somehow confused him rings hollow.

In addition, the request for adjudication procedure adopted for the complex litigation dockets is no more than the functional equivalent of a short calendar claim form. It in no way modifies the filing deadlines set forth in the Practice Book. The court sees no basis for an attorney as experienced as Attorney McCoy to conclude

otherwise, and, therefore, does not credit his testimony that he simply misunderstood the process and timing for responding to the defendants' request to revise. Practice Book § 10-37 is clear on the requirements for responding to a request to revise. Attorney McCoy's claim that he thought a request for adjudication needed to be filed before he was required to respond to the Town defendants' request to revise is just not credible.

Even if it were credible, it would make no difference. The court rejected Attorney McCoy's objections to the request to revise as untimely. Having lost that battle, Attorney McCoy did not have the option of wilfully ignoring the court's orders that he file a revised complaint that complied with the defendants' requests. Yet, that is exactly what he did.

Attorney McCoy testified that he understood the court's November, 2008 order regarding the Town defendants' requests to revise and the need to file a revised complaint in compliance with those requests. Yet, rather than comply with the court's order, Attorney McCoy repeatedly filed amended and, or, amended revised substitute complaints (see #157 and #249 in the 2008 action) which he admitted did not comply with the court's clear and unambiguous orders. Attorney McCoy acknowledged that he knew the amended and or revised substitute complaints he filed did not comply with the Town defendants' requests to revise, but offered the explanation that he was attempting to preserve his client's claims against the Town defendants. Whatever reason Attorney McCoy had for flouting the court's orders, there is no question that he did so consciously and with purpose.

In evaluating where, on the "continuum," this matter would fall, it is evident that Attorney McCoy's conduct in repeatedly ignoring the court's orders went well beyond mistake, inadvertence or excusable neglect. As

summarized above, the plaintiff repeatedly refused to file a revised complaint which complied with the requests to revise which had been deemed automatically granted despite being given extensions of time to do so. Attorney McCoy's testimony only confirmed that his actions, after his objections to the requests to revise were ruled untimely, constituted a knowing, blatant and egregious disregard for the court and the rules of practice.[5] The relief available under § 52-592 (a) is not intended as a pass for such conduct. Thus, the plaintiff may not avail himself of § 52-592 (a) to "save" the 2011 action.

Our Appellate Court has "acknowledg[ed] that, to a litigant, it may appear unnecessarily harsh for a trial court to impose the most powerful sanction of dismissal

---

[5] With respect to the CL&P defendants, the plaintiff's pattern of behavior in the 2008 action tracks very closely to his behavior here. The plaintiff repeatedly ignored the court's orders and refused to file a revised complaint to comply with the requests to revise filed by the CL&P defendants that were deemed automatically granted. In ruling on the CL&P defendants' motion for nonsuit in the 2008 action, the court, (*Shapiro, J.*) in its May 13, 2009 decision, at page 12, held that "the plaintiff's continued failure to properly revise his complaint in compliance with the Practice Book evidences a lack of due regard to necessary rules of procedure. . . . The plaintiff may not be permitted to ignore and not comply with the court's orders and the Practice Book. In so doing, the progress of the pleadings has been inexcusably delayed for months. The return day in this matter was June 17, 2008. Nearly eleven months later, as a result of the plaintiff's noncompliance, there is no operative complaint, let alone progress towards closing the pleadings. Allowing this noncompliance would negate Practice Book § 10-37." (Citation omitted.) When the plaintiff brought an action against the CL&P defendants under § 52-592 (a), the court (*Shapiro, J.*) dismissed the action reaching a conclusion similar to that reached by the court here. See *Pellecchia* v. *Connecticut Light & Power Co.*, 52 Conn. Sup. 435, 54 A.3d 1080 (2011). According to Judge Shapiro in his August 4, 2011 memorandum of decision at page 14, "[t]he court already has found that the plaintiff's continued failure to comply with the court's clear orders in the 2008 action evidenced a wilful failure to do so. This amounts to blatant and egregious conduct, involving cumulative transgressions. The 2008 action did not fail against the CL&P defendants 'for any matter of form.' See General Statutes § 52-592 (a)." *Pellecchia* v. *Connecticut Light & Power Co.*, supra, 449.

rather than a more moderate sanction directed to the attorney himself. . . . Yet, the importance of efficiency and case flow management in our busy trial courts cannot be denied. Caseflow management is based upon the premise that it is the responsibility of the court to establish standards for the processing of cases and also, when necessary, to enforce compliance with those standards. . . . Judges must be firm and create the expectation that a case will go forward on a specific day that it is assigned. In order to dispose of our cases in a fair, timely, and efficient manner, everyone involved must be present on time, prepared, and ready to go forward." (Citation omitted; internal quotation marks omitted.) *Skinner* v. *Doelger*, 99 Conn. App. 540, 551, 915 A.2d 314 (2007).

## V

## CONCLUSION

The plaintiff has failed to meet his burden to prove that the dismissal of the 2008 action was the result of mistake, inadvertence or excusable neglect. Consequently, judgment is entered in favor of the Town of Killingly, Anthony Shippee, and David Sabourin. It is so ordered.