GINA MCCARTHY, COMMISSIONER OF
ENVIRONMENTAL PROTECTION *v.*
WARD LEONARD ELECTRIC
COMPANY, INC., ET AL.
(AC 27454)

McLachlan, Gruendel and West, Js.

Argued September 25—officially released November 27, 2007

*Elizabeth T. Arana*, with whom were *Douglas A. Cohen* and, on the brief, *Mark S. Baldwin* and *Khristopher M. Gregoire*, for the appellants (defendants).

*Scott N. Koschwitz*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellee (plaintiff).

*Opinion*

WEST, J. The defendants, Ward Leonard Electric Company, Inc. (Ward Leonard), and WL Real Estate Company, LLC (WL Real Estate), appeal from the judgment of the trial court denying their motion to open the judgment upon default. On appeal, the defendants claim that the court improperly (1) denied their motion to open the judgment upon default without having held an evidentiary hearing regarding disputed issues of fact and witness credibility, and (2) found that they had violated the state's hazardous waste management regulations, § 22a-449 (c)-100 et seq. of the Regulations of Connecticut State Agencies. We do not agree with the defendants. We conclude that the court properly denied the defendants' motion to open the judgment upon

default. Because the first issue is dispositive of this appeal, it is unnecessary to discuss the second issue.

The court found the following facts. The plaintiff, Gina McCarthy, the commissioner of environmental protection, filed a lawsuit against the defendants after many attempts to compel the defendants to remedy numerous violations of state hazardous waste regulations. Ward Leonard's twenty violations stemmed from its manufacture of electric motors at its facility in Thomaston. WL Real Estate's seven violations arose from its responsibility for the postclosure management of two inground hazardous waste lagoons at the Thomaston site.

After the department of environmental protection (department) discovered violations of the postclosure management requirements by WL Real Estate, it issued a first notice of violation on August 20, 2003. This notice required a response from WL Real Estate within thirty days. WL Real Estate did not respond. Therefore, in early October, 2003, Christine M. Gleason, a sanitary engineer in the waste engineering and enforcement division within the department, called and spoke to Susan Castle, the vice president of human resources and business systems for Ward Leonard. Castle said she would contact Gleason in the near future about the alleged violations. By October 29, 2003, Gleason still had not received a response to the first notice. She, therefore, sent Castle a letter by certified mail, which stated that a response was necessary by November 12, 2003, or the department may take " 'formal action.' "

On January 20, 2004, the department issued a second notice of violation, citing three additional violations of the postclosure management requirements. This notice was sent to WL Real Estate and ARCADIS Geraghty & Miller, Inc. (consultant), an environmental consultant

hired by the defendants to assist in postclosure management of the hazardous waste lagoons. In February and March, 2004, the defendants and the consultant submitted to the department information to correct some of the violations. In April, 2004, Robert C. Isner, Sr., then the acting director of the bureau of waste management, mailed a letter to Castle, which acknowledged the submissions and identified further information required to correct the remaining violations. Furthermore, the letter stated that if the department did not receive the information within thirty days, it would assess its options to resolve the violations, " 'including referring the matter to the [o]ffice of the [a]ttorney [g]eneral.' "

On March 26, 2004, the department mailed to Castle a third and final notice of violation, which outlined numerous hazardous waste management violations at the defendants' Thomaston facility. This notice also required a response within thirty days. In a cover letter addressed to Castle, Isner stated that the significance of the violations had prompted the department to propose a consent order and payment of a civil penalty by the defendants. The letter also stated that if the department did not hear from Castle by April 9, 2004, the department would assume that the defendants did not want to settle the violations through a consent order and that " 'other enforcement options will be recommended.' "

The defendants never confirmed whether they would enter into a consent order. In April, 2004, Gleason called and left a voice message for Castle regarding the defendants' decision to enter into a consent order, but Castle never returned her call. In May, 2004, Gleason prepared a letter addressed to Castle for Isner to sign, explaining that if the department did not hear from the defendants within five days after receiving his letter, the department would assume they did not want to settle the violations and would consider other enforcement

options. The defendants received the letter on May 12, 2004, but did not respond.

Isner also attempted to contact Jon Carter, president of Ward Leonard, in an attempt to resolve the violations. On July 9, 2004, Isner called Carter, but Carter was unavailable. Instead, Isner spoke with Castle, to whom he explained that the outstanding violations had not been corrected and that the case appeared suitable for referral to the office of the attorney general for civil action. Castle stated that she believed the outstanding violations had been corrected and confirmed the defendants' desire to resolve the matter.

On July 22, 2004, Castle met with Gleason and Isner in a final attempt to confirm whether the defendants would enter into a consent order to resolve the violation. At the meeting, Isner asked Castle to provide within two or three weeks a written commitment signed by Carter to enter into a consent order. By October 25, 2004, Carter had still not provided a written commitment. That same day, Isner called Carter and was told he was unavailable. Isner left a voice message in which he confirmed that the department had not received a written commitment from Carter to enter into a consent order and advised him that a quick response was necessary to avoid the filing of a lawsuit. Isner also stated that he would mail to Carter a letter containing the substance of his voicemail. On October 25, 2004, the department mailed such a letter to Carter, with a copy to Castle.

On or about October 28, 2004, Castle called and left a message for Gleason. Castle stated that she had received the October 25, 2004 letter and claimed that all the violations had been corrected. On November 2, 2004, Gleason returned Castle's call and reviewed all of the outstanding violations with her and discussed

what information the defendants had to provide to correct the violations. Castle stated that she would respond to the outstanding violations. Castle also stated that she would speak to Carter when he returned to the office about a written commitment to enter into a consent order. On November 2 and 8, 2004, Castle submitted further information to Gleason addressing the outstanding violations. The submission did not address all of the outstanding violations, nor did it contain a written commitment from Carter to enter into a consent order. The department referred this matter to the office of the attorney general in January, 2005.

The defendants were served with a writ of summons and complaint through their agent for service on April 28, 2005. Castle received copies of the summons and complaint on May 4, 2004. On May 5, 2005, Castle called assistant attorney general Krista E. Trousdale, who had brought the action on behalf of the plaintiff. Castle claimed that the action had been brought in error because the defendants had corrected all the violations. Trousdale responded that Castle was incorrect because Ward Leonard continued to violate three provisions of the hazardous waste management regulations. Trousdale identified the specific violations for Castle[1] and informed her that resolution of the action would require the negotiation and payment of a civil penalty for the past violations previously corrected. On September 16, 2005, the plaintiff filed a motion for default for failure to appear. Castle received copies of the motion for default in late September or early October. Castle ignored the motion for default. On September 29, 2005,

[1] The violations were (1) failure to conduct annual hazardous waste determinations in violation of § 22a-449 (c)-102 (a) (2) (A) of the Regulations of Connecticut State Agencies, (2) failure to record facility inspections in a log or summary in violation of § 22a-449 (c)-102 (b) (2) of the Regulations of Connecticut State Agencies and (3) failure to maintain a written description of employee training in violation of § 22a-449 (c)-102 (a) (2) (K) of the Regulations of Connecticut State Agencies.

the court clerk granted the plaintiff's motion for default for failure to appear against both defendants, and on September 30, 2005, the court issued notice of the entry of default against both defendants. On December 5, 2005, the plaintiff filed a certificate of closed pleadings and claimed the case to the hearing in damages list. On January 19, 2006, the plaintiff filed a motion for judgment, serving copies on both defendants. The defendants did not respond to the motion for judgment, and on January 24, 2006, the motion was granted. On the following day, the defendants filed an answer and a motion to set aside the default. On January 31, 2006, the defendants filed a motion to open the judgment upon default along with a supporting affidavit from Castle. The court denied the motion on June 22, 2006. This appeal followed. Additional facts will be set forth as necessary.

The defendants claim that the court improperly denied their motion to open the judgment upon default without having held an evidentiary hearing regarding disputed issues of fact and witness credibility. We disagree.

We first set forth the legal principles that guide our review. "[I]n granting or refusing an application to open a judgment, the trial court is required to exercise a sound judicial discretion and its decision will be set aside only for an abuse of discretion." (Internal quotation marks omitted.) *Triton Associates* v. *Six New Corp.*, 14 Conn. App. 172, 175, 540 A.2d 95, cert. denied, 208 Conn. 806, 545 A.2d 1104 (1988). "In reviewing claims that the trial court abused its discretion, great weight is given to the trial court's decision and every reasonable presumption is given in favor of its correctness. . . . We will reverse the trial court's ruling only if it could not reasonably conclude as it did." (Internal quotation marks omitted.) *Ins. Co. of Pennsylvania* v. *Waterfield*, 102 Conn. App. 277, 284, 925 A.2d 451 (2007).

We conclude that the court did not abuse its discretion in denying the defendants' motion to open the judgment upon default.

Castle received the summons and complaint for the lawsuit and called the attorney general's office to inquire as to why the summons and complaint had been served. She stated, "I believed that I had resolved the issues at the heart of this lawsuit with the [department], based upon my misunderstanding of prior discussions and correspondence with Robert Isner and Christine Gleason of the [department]." Trousdale attested in her affidavit that she received the telephone call from Castle, who stated that she believed that WL Real Estate and Ward Leonard had corrected all of the violations and that the action was brought in error. Trousdale told Castle that this belief was untrue and that the defendants continued to violate three provisions of the hazardous waste management regulations. Trousdale then specifically identified the continuing violations for Castle. In an articulation of its decision, the court stated, "[g]iven the history of this matter and Ms. Castle's course of dealing in this matter, the court does not find her affidavit credible." The court, therefore, denied the defendants' motion to open the judgment. The court held that the defendants did not have a good defense at the time the judgment was rendered and that the defendants were not prevented from appearing because of mistake, accident or other reasonable cause. We agree with the court.

According to General Statutes § 52-212 (a), "[a]ny judgment rendered or decree passed upon a default or nonsuit in the Superior Court may be set aside, within four months following the date on which it was rendered or passed . . . upon the complaint or written motion of any party or person prejudiced thereby, showing reasonable cause, or that a good cause of action or defense in whole or in part existed at the time of the

rendition of the judgment or the passage of the decree, and that the plaintiff or defendant was prevented by mistake, accident or other reasonable cause from prosecuting the action or making the defense." See also Practice Book § 17-43. In other words, "[t]here must be a showing that (1) a good defense, the nature of which must be set forth, existed at the time judgment was rendered, and (2) the party seeking to set aside the judgment was prevented from making that defense because of mistake, accident or other reasonable cause." (Internal quotation marks omitted.) *Triton Associates* v. *Six New Corp.*, supra, 14 Conn. App. 175.

In the present case, Ward Leonard claimed that it had a good defense to the action at the time the judgment was rendered. Specifically, Ward Leonard claimed it had corrected the violations that serve as the basis for this action and that it had failed to comply with certain regulations because it had a "good faith belief" that certain regulatory requirements did not apply to it. The court held that neither of these proffered defenses was a good defense, as required by the statute and the rules of practice. The court found that the action was premised not just on Ward Leonard's three alleged continuing violations but also on the seventeen alleged prior, long-term violations that Ward Leonard had corrected as of the commencement of the action. The plaintiff had commenced this action to correct the alleged continuing violations, to hold Ward Leonard accountable for the alleged prior violations and to ensure that such violations would not recur. Therefore, Ward Leonard's defenses that it had corrected the violations and that some regulatory requirements did not apply to it were not good defenses. Furthermore, the court found that Ward Leonard's defense that certain hazardous waste management regulatory requirements did not apply to it was invalid. Because these statutes are strict liability statutes, the defendants' "good faith belief"

regarding the applicability of these statutes is irrelevant to the defendants' liability. WL Real Estate did not allege that it had a good defense before the judgment was rendered. The court held, therefore, that because Ward Leonard's defenses were invalid and WL Real Estate did not allege that it had a good defense, the defendants failed to show that they had a good defense before judgment was rendered.

The court also found that the defendants failed to satisfy the second prong of the test laid out in the statute in that they were not prevented from appearing by mistake, accident or other reasonable cause. Castle attested in her affidavit that she believed the issues at the heart of the lawsuit had been resolved, the lawsuit had been filed in error and that the lawsuit would be resolved without any further action on behalf of the defendants. As previously stated, however, the court did not find Castle's affidavit credible because of her course of dealing in the matter and its history. Castle also claimed that she suffered extreme emotional stress, which impaired her ability "to address and appreciate the nature and ramifications of this lawsuit." The court found that this claim regarding Castle's mental state might be persuasive but for the fact that Carter was aware of the matter, as well. Every time the department succeeded in communicating with him, he managed to address the matter and to delegate responsibility to Castle. The court found that Castle did not truly believe that the issues at the heart of the lawsuit had been resolved. Additionally, the court found the argument that Castle was under extreme emotional stress to be unpersuasive. Therefore, the court found that the defendants' neglect of this action constituted gross negligence. The court noted that the defendants were given both legal and actual notice of the commencement of the action, but they simply chose not to appear.

We agree with the court. First, we conclude that the court did not abuse its discretion in failing to hold an evidentiary hearing regarding disputed issues of fact and witness credibility. Neither the statute nor our rules of practice require that the court hold an evidentiary hearing when affidavits conflict regarding a motion to open the judgment upon default. Ordinarily, the court cannot make credibility determinations on the basis of the record alone. "[I]t is within the province of the trial court, when sitting as the fact finder, to weigh the evidence presented and determine the credibility and effect to be given the evidence. . . . Credibility must be assessed . . . not by reading the cold printed record, but by observing firsthand the witness' conduct, demeanor and attitude." (Internal quotation marks omitted.) *State* v. *Lawrence*, 282 Conn. 141, 155, 920 A.2d 236 (2007). In the present case, however, Castle's affidavit was not only at odds with the affidavits submitted by the plaintiff, but it was also in conflict with the record. When the court was deciding whether to grant the defendants' motion to open the judgment, it had at its disposal the affidavits submitted by both parties, and the countless letters that had been sent between and among the parties. Therefore, the court was able to view the letters sent by Gleason and Isner to Castle and Carter and also the letters sent by Castle and Carter to Gleason and Isner. The letters demonstrated the fact that Castle and Carter had been told repeatedly, for months, that they were not in compliance with the regulations in question. They were given several opportunities to remedy the situation, but they refused to do so. Therefore, Castle's claim that she was unaware of the defendants' noncompliance with the regulations was unpersuasive. These letters provided the court with sufficient evidence to conclude reasonably that the defendants were not acting diligently, if at all, to resolve the matter at hand. We conclude that the court was acting

within its discretion in discrediting Castle's affidavit given the history of the matter and Castle's course of dealing in the matter.

Second, we conclude that the defendants did not have a "good defense," as neither of their proffered defenses was valid. Furthermore, we conclude that the defendants failed to appear out of negligence, not due to mistake, accident or other reasonable cause. The defendants were provided with notice of the action. They were served with the summons and complaint, and Castle also spoke with Trousdale, who informed Castle that the action had been brought appropriately and explained to Castle the regulations that the defendants had violated. Instead of filing an appearance, the defendants chose to ignore the action altogether. The court did not abuse its discretion in denying the defendants' motion to open the judgment upon default.

"Negligence is no ground for vacating a judgment, and it has been consistently held that the denial of a motion to open a default judgment should not be held an abuse of discretion where the failure to assert a defense was the result of negligence." (Internal quotation marks omitted.) *Woodruff* v. *Riley*, 78 Conn. App. 466, 471, 827 A.2d 743, cert. denied, 266 Conn. 922, 835 A.2d. 474 (2003). In the present case, we conclude that the defendants were simply negligent in failing to appear in the action. They also failed to assert a valid defense and, thus, failed to meet the second prong of the test set forth in § 52-212 (a).

The judgment is affirmed.

In this opinion the other judges concurred.