ROBERT J. TELLAR *v.* ABBOTT LABORATORIES, INC.
(AC 29504)

Flynn, C. J., and Gruendel and Harper, Js.

---

Argued March 12—officially released May 5, 2009

*Charles D. Houlihan, Jr.*, for the appellant (plaintiff).

*Shel D. Myers*, for the appellee (defendant).

*Opinion*

GRUENDEL, J. This appeal concerns the accidental failure of suit statute, General Statutes § 52-592. The plaintiff, Robert J. Tellar, appeals from the judgment of the trial court dismissing his age and gender discrimination action against the defendant, Abbott Laboratories, Inc. He claims that the court improperly determined that § 52-592 did not apply under the particular facts at hand.[1] We reverse the judgment of the trial court.

The procedural posture of this case governs our recitation of the facts underlying the appeal. "When a . . . court decides a . . . question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this

---

[1] The plaintiff also challenges the propriety of the defendant's motion to dismiss, contending that the motion procedurally is impermissible in the face of an objection. See *Henriquez* v. *Allegre*, 68 Conn. App. 238, 241 n.6, 789 A.2d 1142 (2002); cf. *Egri* v. *Foisie*, 83 Conn. App. 243, 247–51, 848 A.2d 1266 (discussing distinction between motion to dismiss and motion to strike), cert. denied, 271 Conn. 931, 859 A.2d 930 (2004). We do not address that issue in light of our resolution of the plaintiff's principal claim.

regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) *Bellman* v. *West Hartford*, 96 Conn. App. 387, 393, 900 A.2d 82 (2006). Further, in addition to admitting all facts well pleaded, the motion to dismiss "invokes any record that accompanies the motion, including supporting affidavits that contain undisputed facts." (Internal quotation marks omitted.) *Henriquez* v. *Allegre*, 68 Conn. App. 238, 242, 789 A.2d 1142 (2002).

Given that standard, the court was required to find, for purposes of deciding the motion to dismiss, that the plaintiff worked for the defendant for thirty-two years. In the spring of 2005, he was constructively discharged from his employment as a result of intolerable working conditions that stemmed from age and gender discrimination on the defendant's part. The plaintiff filed timely complaints with the commission on human rights and opportunities (state commission) and the federal Equal Employment Opportunity Commission (federal commission). With their consent, the plaintiff commenced a civil action against the defendant in March, 2006 (first action).[2] On May 31, 2006, the defendant served on the plaintiff its "First Set of Interrogatories and Requests for Production of Documents" that consisted of sixty-six interrogatories replete with multiple subparts and nineteen documentary requests. On August 14, 2006, the court granted the defendant's motion to compel discovery. When the plaintiff failed to respond in any manner, the court, *Hon. Richard M. Rittenband*, judge trial referee, rendered a judgment of dismissal against him on September 29, 2006.

[2] By order dated April 21, 2008, this court granted the motion of the plaintiff to take judicial notice of the first action and the plaintiff's filings therein.

The plaintiff thereafter timely moved to open that judgment pursuant to General Statutes § 52-212. Accompanying that motion was the plaintiff's fifty-one page response to the defendant's discovery request and a sworn affidavit from his counsel. In his motion, the plaintiff averred that "good cause exists to open the judgment because [the plaintiff] has complied with his discovery obligations as soon as possible given the earlier schedule conflicts and the recent unavailability of his attorney." The plaintiff explained that during the summer of 2006, his counsel, Charles D. Houlihan, Jr., was largely unavailable due to family health issues. Specifically, Houlihan, a sole practitioner, was consumed by the care for his dying father-in-law, with whom Houlihan lived and who ultimately died in November of that year. In addition, Houlihan's wife, who also served as his legal secretary, underwent a surgical procedure that required hospitalization. As a result, "the routine of counsel's office was substantially disrupted for several weeks because of these events and counsel was unable to attend to the completion of the responses to the discovery requests." The plaintiff also emphasized that the case was dismissed only months after its commencement. Despite those representations and the plaintiff's subsequent compliance with the discovery request, the court, *Bryant, J.*, denied the plaintiff's motion to open on February 26, 2007.[3]

---

[3] We note that we are not asked to pass on the propriety of that judgment in this appeal. Cf. *Ruddock* v. *Burrowes*, 243 Conn. 569, 571 n.4, 706 A.2d 967 (1998) (noting that plaintiff elected not to appeal from denial of motion to open, which is governed by abuse of discretion standard of appellate review, and instead brought suit pursuant to General Statutes § 52-592). We further note that the court's order denying the motion to open stated in full: "[The motion to open] has been denied on February 22, 2007, for reasons stated in the plaintiff's opposition." We repeatedly have admonished such wholesale adoption of the reasoning or brief of a party. See *In re Halle T.*, 96 Conn. App. 815, 824–27, 902 A.2d 670, cert. denied, 280 Conn. 924, 908 A.2d 1087 (2006); *Wendover Financial Services Corp.* v. *Connelly*, 61 Conn. App. 244, 247, 763 A2d 670 (2000); *Doe* v. *Bridgeport Hospital*, 40 Conn. App. 429, 432–33, 671 A.2d 405 (1996); *Grayson* v. *Grayson*, 4 Conn. App. 275, 284, 494 A.2d 576 (1985), appeal dismissed, 202 Conn. 221, 520 A.2d 225 (1987).

The plaintiff instituted the present action pursuant to § 52-592 on May 18, 2007. His two count complaint alleged discrimination on the basis of his age and gender. The complaint also alleged that the plaintiff "timely filed this complaint with the [state commission] and the federal [commission] and has been authorized to commence a civil action by each agency." The defendant's first responsive pleading was its August 3, 2007 motion to dismiss. In that motion, the defendant alleged that the court lacked subject matter jurisdiction because the complaint was not filed within ninety days of the receipt of the notice of the right to sue issued by the federal commission or the release of jurisdiction issued by the state commission and, hence, was time barred. In neither its motion to dismiss nor its memorandum of law in support thereof did the defendant address § 52-592 or its applicability to the present action, a point raised by the plaintiff in his opposition to the motion. The plaintiff's opposition also asked the court to take judicial notice of the documents filed in the first action and repeated his allegations concerning Houlihan's family medical issues. The defendant thereafter filed a reply to the plaintiff's opposition in which it argued that because the plaintiff had not demonstrated mistake, inadvertence or excusable neglect, he could not seek recourse under § 52-592.[4] The court heard argument on the motion to dismiss on November 5, 2007.

---

[4] The defendant also stated in his reply to the plaintiff's opposition that "the plaintiff should not be permitted to force the defendant to incur even more costs in a second lawsuit, particularly where as here, the [state commission] has already reviewed the plaintiff's claims of age and gender discrimination based on virtually the same allegations as contained in the instant lawsuit and determined that these claims lack merit." The defendant repeats that argument in the statement of facts in its appellate brief. To the extent that the argument suggests that the state commission's preliminary merit assessment review, which is conducted without a hearing, presentation of evidence or opportunity for cross-examination, operates as res judicata, precluding subsequent litigation, the defendant wisely has not pursued such a claim on appeal.

In its November 13, 2007 memorandum of decision, the court, *McWeeny, J.*, concluded that the plaintiff had not demonstrated excusable neglect and thus granted the motion to dismiss. The plaintiff filed a motion for reconsideration, in which he argued that the defendant "made no effort to show prejudice by reason of the delay caused by the attention to family medical needs" and requested that he "not lose his substantive rights by reason of the medical emergencies faced by his counsel." The court denied that motion, and this appeal followed.

On appeal, the plaintiff contends that the court improperly concluded, under the facts of this case, that § 52-592 did not apply. Specifically, he argues that because the conduct precipitating the disciplinary dismissal of the first action was not egregious, he should be entitled to the relief afforded by that remedial statute. The defendant counters that the plaintiff has not demonstrated mistake, inadvertence or excusable neglect. We agree with the plaintiff.

We begin by noting the well established standard of review on a challenge to a ruling on a motion to dismiss. "When the facts relevant to an issue are not in dispute, this court's task is limited to a determination of whether, on the basis of those facts, the trial court's conclusions of law are legally and logically correct." (Internal quotation marks omitted.) *Rios* v. *CCMC Corp.*, 106 Conn. App. 810, 815, 943 A.2d 544 (2008). Because there is no dispute regarding the basic material facts, this case presents an issue of law and our review is plenary. See id. Similarly, the question of whether the court properly applied § 52-592 presents an issue of law over which our review is plenary. See *Gonzalez* v. *Surgeon*, 284 Conn. 554, 572, 937 A.2d 13 (2007) (whether statute properly interpreted and applied is question of law subject to plenary review).

General Statutes § 52-592 commonly is known as the saving statute. See, e.g., *Peabody N.E., Inc.* v. *Dept. of Transportation*, 250 Conn. 105, 116, 735 A.2d 782 (1999); *McKeever* v. *Fiore*, 78 Conn. App. 783, 795, 829 A.2d 846 (2003). It provides in relevant part that "[i]f any action, commenced within the time limited by law, has failed one or more times to be tried on its merits . . . for any matter of form . . . the plaintiff . . . may commence a new action . . . for the same cause at any time within one year after the determination of the original action or after the reversal of the judgment."[5] General Statutes § 52-592 (a). Our Supreme Court has long held that § 52-592 "is remedial and is to be liberally interpreted." *Ross Realty Corp.* v. *Surkis*, 163 Conn. 388, 393, 311 A.2d 74 (1972); see also *Ruddock* v. *Burrowes*, 243 Conn. 569, 575, 706 A.2d 967 (1998); *Isaac* v. *Mount Sinai Hospital*, 210 Conn. 721, 728, 557 A.2d 116 (1989). Its essential purpose is to ensure "the plaintiff the right to a trial of his claim."[6] *Contadini* v. *DeVito*, 71 Conn. App. 697, 702, 803 A.2d 423, cert. denied, 262 Conn. 918, 812 A.2d 862 (2002). That "broad and liberal purpose is not to be frittered away by any narrow construction. The important consideration is that by invoking judicial aid, a litigant gives timely notice to his adversary of a present purpose to maintain his rights before the courts." (Internal quotation marks omitted.) *Isaac* v. *Mount Sinai Hospital*, supra, 733, quoting *Gaines* v. *New York*, 215 N.Y. 533, 539, 109 N.E. 594 (1915) (Cardozo, J.).

---

[5] "Our Supreme Court has construed the term original action with respect to its meaning in [General Statutes] § 52-592 as the first action filed within the time allowed by the applicable statute of limitations." (Internal quotation marks omitted.) *Lind-Larsen* v. *Fleet National Bank of Connecticut*, 84 Conn. App. 1, 10, 852 A.2d 799, cert. denied, 271 Conn. 940, 861 A.2d 514 (2004). It is undisputed that the first action was commenced in a timely manner.

[6] To the extent that the defendant complains that the plaintiff is seeking "a second bite at the apple," as it maintained in its reply to the plaintiff's opposition to the motion to dismiss, it fundamentally misunderstands General Statutes § 52-592.

In *Ruddock* v. *Burrowes,* supra, 243 Conn. 569, our Supreme Court considered whether a disciplinary dismissal may be characterized as a dismissal "for any matter of form" for purposes of obtaining relief pursuant to § 52-592. The court concluded that "disciplinary dismissals are not excluded categorically from the relief afforded by § 52-592 (a)"; id., 576; rather, whether the dismissal of a prior proceeding permitted a plaintiff recourse to the statute "depends upon the nature and the extent of the conduct that led to the disciplinary dismissal." Id., 570. Accordingly, the court instructed that the egregiousness of the conduct precipitating the dismissal must be examined in determining whether § 52-592 applies in a given instance. It stated: "Disciplinary dismissals do not, in all cases, demonstrate the occurrence of misconduct so egregious as to bar recourse to § 52-592. . . . Whether the statute applies cannot be decided in a factual vacuum. To enable a plaintiff to meet the burden of establishing the right to avail himself or herself of the statute, a plaintiff must be afforded an opportunity to make a factual showing that the prior dismissal was 'a matter of form' in the sense that the plaintiff's noncompliance with a court order occurred in circumstances such as mistake, inadvertence or excusable neglect." (Citation omitted.) Id., 576–77. In applying that precedent, this court in *Gillum* v. *Yale University,* 62 Conn. App. 775, 773 A.2d 986, cert. denied, 256 Conn. 929, 776 A.2d 1146 (2001), explained that "it is appropriate to consider each case along a continuum; at one extreme are dismissals for mistake or inadvertence, at the other extreme are dismissals for serious misconduct or a series of cumulative transgressions." Id., 783.

In *Gillum,* the plaintiffs demonstrated a pattern of dilatory conduct that spanned years. As the court recounted: "The record supports the court's conclusion that [the original action] was beset by lackadaisical

behavior by the plaintiffs at every turn. The court aptly characterized [the original action] as the poster child for dilatory behavior dismissals. In addition to the fact that the plaintiffs' conduct occasioned three dismissals, which hampered the movement of the case toward a resolution, the plaintiffs further hindered the progress of the case by continually running deadlines to their limits before filing motions to reopen or complying with court orders. Even after the third dismissal, the plaintiffs' counsel failed to communicate promptly to the court an explanation for his conduct. Additionally, the plaintiffs' counsel permitted months to elapse before attempting to reopen the case." Id., 783–84. Given that "pattern of repeated delay," the court concluded that § 52-592 was inapplicable. Id., 787. This court reached the same conclusion in *Skibeck* v. *Avon*, 24 Conn. App. 239, 587 A.2d 166, cert. denied, 219 Conn. 912, 593 A.2d 138 (1991), in light of one decade of litigation and the trial court's dismissal of the original action three times for failure to appear and failure to prosecute. Id., 243; see also *Skinner* v. *Doelger*, 99 Conn. App. 540, 915 A.2d 314 (involving failure to prosecute action over period of years and failure to appear at trial), cert. denied, 282 Conn. 902, 919 A.2d 1037 (2007); *Pepitone* v. *Serman*, 69 Conn. App. 614, 619–20, 794 A.2d 1136 (2002) (involving failure to close pleadings over period of years).

The present case is readily distinguishable from that line of cases in which § 52-592 did not apply. The conduct here was neither repeated nor protracted. It consisted of a singular failure to comply with a discovery request over the course of four months.[7] As we recently noted, "our Supreme Court [has drawn] a critical distinction between categories of cases involving, for

[7] The defendant served on the plaintiff its "First Set of Interrogatories and Requests for Production of Documents" on May 31, 2006, and the court rendered the judgment of dismissal against the plaintiff on September 29, 2006.

instance, [n]onappearances that interfere with proper judicial management of cases, and cause serious inconvenience to the court and to opposing parties . . . and those involving things such as a mere failure to respond to a notice of dormancy . . . ." (Citation omitted; internal quotation marks omitted.) *Skinner* v. *Doelger*, supra, 99 Conn. App. 557–58. The present case involves the mere failure to respond to a detailed set of sixty-six interrogatories and nineteen documentary requests within months. Tellingly, the defendant has not argued, either before the trial court or on appeal, that it has been prejudiced by that failure.

This case more closely resembles *Stevenson* v. *Peerless Industries, Inc.*, 72 Conn. App. 601, 806 A.2d 567 (2002), which also involved the failure to comply with a discovery request. In concluding that the conduct precipitating the disciplinary dismissal did "not rise to the level of egregious conduct"; id., 609; the court considered the fact that (1) the plaintiff's failure to respond to the discovery request occurred in the time span of six months; id., 610; (2) the conduct did not result in considerable delay or inconvenience to the court or to opposing parties; (3) the plaintiff provided a credible excuse for his failure to respond; (4) it did "not appear that the plaintiff failed to respond to [the defendant's] request for dilatory reasons or as a delay tactic, particularly when viewed in light of the fact that this case has not been plagued by years of unnecessary litigation"; id.; and (5) the plaintiff represented "that he [was] prepared to comply with all requests." Id. In light of those considerations, this court concluded that "this situation invokes the type of 'excusable neglect' that our Supreme Court provided for in *Ruddock*," mandating application of § 52-592. Id. That precedent compels a similar conclusion in the present case.

We already have noted the fact that the conduct giving rise to the disciplinary dismissal was a singular failure

to comply with a discovery request over the course of four months that did not result in considerable delay or inconvenience to the defendant or the court. In addition, the plaintiff provided a credible explanation for his failure to comply with the discovery request—namely, the grave health of members of his counsel's family—that the defendant at no time has disputed. Furthermore, unlike *Stevenson*, the plaintiff fully complied with the discovery request prior to filing his motion to open the judgment in the first action and prior to instituting the present action. His fifty-one page response to the defendant's discovery request was filed on January 25, 2007, less than eight months after the request first was made. Such compliance belies any contention that the plaintiff engaged in a pattern of repeated delay. Cf. *Gillum* v. *Yale University*, supra, 62 Conn. App. 787.

Intertwined with any analysis of the applicability of § 52-592 is a fundamental policy consideration in this state. "Connecticut law repeatedly has expressed a policy preference to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his or her day in court. . . . Our practice does not favor the termination of proceedings without a determination of the merits of the controversy where that can be brought about with due regard to necessary rules of procedure. . . . For that reason, [a] trial court should make every effort to adjudicate the substantive controversy before it, and, where practicable, should decide a procedural issue so as not to preclude hearing the merits of an appeal." (Citations omitted; internal quotation marks omitted.) *Egri* v. *Foisie*, 83 Conn. App. 243, 249–50, 848 A.2d 1266, cert. denied, 271 Conn. 931, 859 A.2d 930 (2004); see also *Rocco* v. *Garrison*, 268 Conn. 541, 558, 848 A.2d 352 (2004); *Johnson* v. *Atlantic Health Services, P.C.*, 83 Conn. App. 268, 278, 849 A.2d 853 (2004). As Justice Shea explained in *Andrew Ansaldi Co.* v. *Planning & Zoning Commission*, 207

Conn. 67, 540 A.2d 59 (1988): "Centuries ago the common law courts of England similarly insisted upon rigid adherence to the prescribed forms of action, resulting in the defeat of many suits for technical faults rather than upon their merits. Some of that ancient jurisprudence migrated to this country with the settlers and has affected the development of procedural law in this state. Beginning in the middle of the nineteenth century, however, our legislature enacted numerous procedural reforms applicable to ordinary civil actions that are designed to ameliorate the consequences of many deviations from the prescribed norm, which result largely from the fallibility of the legal profession, in order generally to provide errant parties with an opportunity for cases to be resolved on their merits rather than dismissed for some technical flaw." Id., 75–76 (*Shea, J.*, concurring). General Statutes § 52-592 was enacted, in large measure, to shield the client from the fallibility of counsel.

In considering "the nature and the extent of the conduct that led to the disciplinary dismissal"; *Ruddock* v. *Burrowes*, supra, 243 Conn. 570; we are convinced that the present case involves excusable neglect. As such, the plaintiff is entitled to the relief afforded by § 52-592. We therefore conclude that the court improperly granted the defendant's motion to dismiss.

The judgment is reversed and the case is remanded for further proceedings in accordance with law.

In this opinion the other judges concurred.