ANTHONY J. PELLECCHIA, ADMINISTRATOR
(ESTATE OF ANTHONY E. PELLECCHIA)
*v.* CONNECTICUT LIGHT AND
POWER COMPANY ET AL.*

Superior Court, Complex Litigation Docket at Hartford
File No. X04-CV-09-6004337-S

Memorandum filed August 4, 2011

*Proceedings*

* Affirmed. *Pellecchia* v. *Connecticut Light & Power Co.*, 139 Conn. App. 88, 54 A.3d 658 (2012).

*Jason L. McCoy,* for the plaintiff.

*Richard L. Street* and *Lauren J. Taylor,* for the defendants.

SHAPIRO, J. This matter is before the court concerning the defendants Connecticut Light and Power Company, Northeast Utilities, and Northeast Utilities Service Company's (collectively, CL&P defendants) motion to dismiss for lack of subject matter jurisdiction. The court heard oral argument concerning the motion on June 27, 2011. After considering the parties' submissions and arguments, the court issues this memorandum of decision. For the reasons stated below, the motion is granted.

I

BACKGROUND

The CL&P defendants seek dismissal of the claims asserted against them in the plaintiff's complaint. They assert that the court is without subject matter jurisdiction over the plaintiff's claims since this action was not commenced within the two year statute of limitations period for wrongful death claims provided in General Statutes § 52-555. As discussed below, this matter arises from an alleged July 29, 2006 incident involving the death of the plaintiff's decedent. According to the return of service, as to the CL&P defendants, this matter was commenced on July 28, 2009, nearly three years later.

The CL&P defendants also argue that, in this matter (2009 action), the plaintiff may not avail himself of the "accidental failure of suit statute," General Statutes § 52-592,[1] since a prior action commenced by the plaintiff, Docket No. X04-CV-08-6003273 (2008 action), concerning the same incident, resulted in a disciplinary

---

[1] In relevant part, § 52-592 (a) provides: "If any action, commenced within the time limited by law, has failed one or more times to be tried on its merits . . . for any matter of form . . . the plaintiff . . . may commence a new action . . . for the same cause at any time within one year after the determination of the original action . . . ." General Statutes § 52-592 (a).

dismissal for wilful failure to follow clear orders of the court, and therefore did not fail for reasons of mistake, inadvertence or excusable neglect.

In response, the plaintiff asserts that the court has subject matter jurisdiction, since a disciplinary dismissal is not categorically excluded from the meaning of "for any matter of form" for the purposes of obtaining relief under § 52-592. He contends that, in view of the policy preference for bringing about a trial on the merits, the circumstances in the 2008 action do not warrant precluding him from proceeding anew against the CL& P defendants in this action.

For ease of reference, the court repeats its summary of the procedural background in the 2008 action from its May 13, 2009 memorandum of decision (May, 2009 decision) in that matter, in which the court granted the CL&P defendants' motion seeking the entry of a nonsuit against the plaintiff, pages 2–4: "The plaintiff commenced this action with the service of his complaint, dated May 30, 2008. In the complaint, the plaintiff, as administrator of the estate of Anthony E. Pellecchia (decedent), seeks to recover damages, as the result of a July 28, 2006 incident in which the decedent allegedly suffered serious personal injuries, from which he died, as a result of a motorcycle which he was operating coming into contact with an energized electrical line on or near the roadway.

"On August 18, 2008, the movants filed a request to revise the complaint (#105) (CL&P request to revise). The plaintiff moved for a thirty day extension of time to respond to the CL&P request to revise (#110). The plaintiff also moved for an extension of time, until September 25, 2008, to respond to a request to revise the complaint, which was filed by the defendants town of Killingly, Anthony Shippee, and David Sabourin (town

defendants) on June 19, 2008 (#102). The court (*Sfer-razza, J.*) granted this second motion for extension of time on September 8, 2008 (#111).

"Arguably, if the plaintiff's motion for an extension of time as to the CL&P request to revise had been granted, a thirty day extension of time would have extended the plaintiff's deadline to respond to that request to revise until October 17, 2008. The plaintiff did not file objections to the CL&P request to revise or a revised complaint by October 17, 2008.

"On October 28, 2008, the movants filed a motion for nonsuit against the plaintiff for his failure to file a revised complaint in accordance with their request to revise (#133) (motion for nonsuit). No objection to the motion for nonsuit was filed by the plaintiff.[2] On November 18, 2008, the plaintiff filed untimely objections to the CL&P request to revise (#146).

"On November 20, 2008, the court issued an order concerning the motion for nonsuit, as follows: 'Pursuant to P.B. § 10-37,[3] the time by which the plaintiff was to file any objections to the defendants CL&P, NU, and NUSC's requests to revise elapsed. The plaintiff's objections, dated November 18, 2008 (#146), are untimely. Accordingly, the requests are deemed to have been automatically granted. See P.B. § 10-37. Plaintiff shall file a revised complaint within fifteen days of the date

---

[2] Counsel for the parties attended a status conference with the court on November 6, 2008, at which they agreed to the entry of a scheduling order. Among the deadlines in that order, written discovery was to be completed by February 27, 2009, fact witness depositions were to be completed by March 27, 2009, plaintiff's experts were to be disclosed by April 27, 2009, and the pleadings were to be closed by July 1, 2009.

[3] Practice Book § 10-37 (a) provides in relevant part that "such request shall be deemed to have been automatically granted by the judicial authority on the date of filing and shall be complied with by the party to whom it is directed within thirty days of the date of filing the same, unless within thirty days of such filing the party to whom it is directed shall file objection thereto."

of this order.' See #133. Thus, instead of ordering a nonsuit at that time, the court afforded the plaintiff an additional extension of fifteen days, until December 5, 2008, to file a revised complaint in compliance with the CL&P request to revise.

"Rather than filing such a revised complaint in compliance with the court's order, on December 4, 2005, the plaintiff filed a request for leave to amend complaint (#157), with an amended complaint. The CL&P defendants filed an objection to the request for leave to amend on December 19, 2008 (#159), since the amended complaint did not incorporate most of the revisions sought in the CL&P request to revise. The court sustained this objection by order dated January 20, 2009. More than a month later, on February 23, 2009, the plaintiff filed an 'objection' to the defendants' objection to the request for leave to amend (#186), which ignored the court's January 20, 2009 order, and asserted that the amended complaint complied with the court's November 20, 2008 order, which had directed the plaintiff to file a revised complaint in accordance with the CL&P request to revise. By order dated February 27, 2009, the court found the plaintiff's belated 'objection' to be moot, since the court had sustained the CL&P defendants' objection to the plaintiff's request for leave to amend complaint on January 20, 2009. See #159."

At page 5 of court's May, 2009 decision, the court stated, "There is no reasonable basis for the plaintiff to assert either that the court's order was unclear or that it did not direct him to revise his complaint in compliance with the CL&P request to revise."

At page 8 of the May, 2009 decision, the court stated, "The plaintiff also argues that he did not intend to not comply with the court's orders. As explained above, his excuses for failing to do so are not well-founded. Although the plaintiff was afforded extensions of time

to file an appropriately revised complaint, he did not do so. The plaintiff's continued failure to comply with the court's clear orders evidences a wilful failure to do so."

Further, at page 10 of the May, 2009 decision, the court stated, "Here, as stated above, the court's November 20, 2008 order was clear. The plaintiff violated it by not filing a revised complaint in compliance therewith by December 5, 2008. The court's order, in effect, was reiterated when the court sustained the objection to the plaintiff's request for leave to amend on January 20, 2009. Even then the plaintiff failed to comply by filing a revised complaint in compliance with the court's orders. See Practice Book § 10-8 (pleadings shall advance within fifteen days of the filing of a decision by the judicial authority)."

At page 12 of the May, 2009 decision, the court stated, "Here, the plaintiff's continued failure to properly revise his complaint in compliance with the Practice Book evidences a lack of due regard to necessary rules of procedure. See *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, [257 Conn. 1, 16, 776 A.2d 1115 (2001)]. The plaintiff may not be permitted to ignore and not comply with the court's orders and the Practice Book. In so doing, the progress of the pleadings has been inexcusably delayed for months. The return day in this matter was June 17, 2008. Nearly eleven months later, as a result of the plaintiff's noncompliance, there is no operative complaint, let alone progress toward closing the pleadings. Allowing this noncompliance would negate Practice Book § 10-37.

"The plaintiff had ample, and extended, time to properly revise his complaint, but did not so. The plaintiff has not complied with the court's orders. See, in contrast, *Blinkoff* v. *O & G Industries, Inc.*, [89 Conn. App. 251, 259, 873 A.2d 1009, cert. denied, 275 Conn. 907, 882

A.2d 668 (2005)] (plaintiff later complied with discovery requests after prior lack of diligence and lack of adherence to court orders). In the exercise of its discretion, the court finds that a nonsuit is an appropriate sanction for the plaintiff's failure to file a revised complaint in violation of the court's orders and Practice Book § 10-37."

Thus, in the May, 2009 decision, a nonsuit was ordered as to the CL&P defendants as a result of the plaintiff's wilful failure to comply with court orders.

On September 30, 2009, the court issued another memorandum of decision in the 2008 action (September, 2009 decision), in which it denied the plaintiff's motion to open the nonsuit. At pages 6–7, the court stated, "the plaintiff wilfully failed to comply, after the court found that the requests [to revise] were deemed to be automatically granted, and after the plaintiff was ordered to file a revised complaint in compliance with the requests, and the plaintiff did not do so. The record here does not evidence a reasonable mistake or misunderstanding. Accordingly, the plaintiff has not shown that he 'was prevented by mistake, accident or other reasonable cause from prosecuting the action.' See General Statutes § 52-212 (a)."[4]

The plaintiff appealed the court's September, 2009 decision in the 2008 action. The Appellate Court

[4] General Statutes § 52-212 (a) provides: "Any judgment rendered or decree passed upon a default or nonsuit in the Superior Court may be set aside, within four months following the date on which it was rendered or passed, and the case reinstated on the docket, on such terms in respect to costs as the court deems reasonable, upon the complaint or written motion of any party or person prejudiced thereby, showing reasonable cause, or that a good cause of action or defense in whole or in part existed at the time of the rendition of the judgment or the passage of the decree, and that the plaintiff or defendant was prevented by mistake, accident or other reasonable cause from prosecuting the action or making the defense."

affirmed this court's decision, per curiam. See *Pellecchia* v. *Connecticut Light & Power Co.*, 126 Conn. App. 903, 12 A.3d 641 (2011).

## II

## STANDARD OF REVIEW

"Whenever the absence of jurisdiction is brought to the notice of the court or tribunal, cognizance of it must be taken and the matter passed upon before it can move one further step in the cause; as any movement is necessarily the exercise of jurisdiction." (Internal quotation marks omitted.) *Statewide Grievance Committee* v. *Rozbicki*, 211 Conn. 232, 245, 558 A.2d 986 (1989). The Supreme Court has termed this "fundamental principle" the "jurisdiction first rule. Once the question of lack of jurisdiction of a court is raised, [it] must be disposed of no matter in what form it is presented. . . . The court must fully resolve it before proceeding further with the case." (Internal quotation marks omitted.) *St. Paul Travelers Cos.* v. *Kuehl*, 299 Conn. 800, 816, 12 A.3d 852 (2011).

"[T]rial courts addressing motions to dismiss for lack of subject matter jurisdiction . . . may encounter different situations, depending on the status of the record in the case. . . . [L]ack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. . . . Different rules and procedures will apply, depending on the state of the record at the time the motion is filed.

"When a trial court decides a jurisdictional question raised by a pretrial motion to dismiss on the basis of the complaint alone, it must consider the allegations of the complaint in their most favorable light. . . . In

this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . In contrast, if the complaint is supplemented by *undisputed facts* established by affidavits submitted in support of the motion to dismiss . . . the trial court, in determining the jurisdictional issue, may consider these supplementary undisputed facts and need not conclusively presume the validity of the allegations of the complaint. . . . Rather, those allegations are tempered by the light shed on them by the [supplementary undisputed facts]. . . . [W]here a jurisdictional determination is dependent on the resolution of a critical factual dispute, it cannot be decided on a motion to dismiss in the absence of an evidentiary hearing to establish jurisdictional facts." (Emphasis in original; internal quotation marks omitted.) *Columbia Air Services, Inc.* v. *Dept. of Transportation,* 293 Conn. 342, 347–48, 977 A.2d 636 (2009).

Here, concerning the issues which are dispositive, as explained below, there are no disputed facts. No evidentiary hearing was requested or required. "The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone." (Internal quotation marks omitted.) *Gold* v. *Rowland,* 296 Conn. 186, 201, 994 A.2d 106 (2010). No evidentiary hearing need be held on a motion to dismiss where there is no genuine issue as to a material fact. See *Standard Tallow Corp.* v. *Jowdy,* 190 Conn. 48, 56, 459 A.2d 503 (1983).

### III

### DISCUSSION

### A

"[A]lthough subject matter jurisdiction may be raised at any time, a motion to dismiss may not be the proper

procedural vehicle for asserting that an action is not saved by [§ 52-592 (a)] . . . . [A] trial court properly may consider a motion to dismiss in such circumstances when the plaintiff does not object to the use of the motion to dismiss. *Capers* v. *Lee*, 239 Conn. 265, 269–70 n.9, 684 A.2d 696 (1996)." (Internal quotation marks omitted.) *Metcalfe* v. *Sandford*, 271 Conn. 531, 535 n.4, 858 A.2d 757 (2004). Here, the plaintiff did not object to the use of the motion to dismiss to raise the issue. Accordingly, the court may properly decide the motion on the merits. See id.

The court first considers the applicable statute of limitations. The wrongful death statute, § 52-555 (a), provides in relevant part: "In any action surviving to or brought by an executor or administrator for injuries resulting in death, whether instantaneous or otherwise, such executor or administrator may recover from the party legally at fault for such injuries just damages . . . provided no action shall be brought to recover such damages and disbursements but within two years from the date of death . . . ."

"[B]ecause § 52-555 creates a liability where none formerly existed, the statute must be strictly construed and we are not at liberty to extend, modify or enlarge its scope through the mechanics of construction. . . . [T]he [time] limitation contained within § 52-555 is a jurisdictional prerequisite which cannot be waived and which must be met in order to maintain an action under § 52-555. . . . Thus, § 52-555 is not to be treated as an ordinary statute of limitation[s] . . . . Rather, it is a limitation on the liability itself, and not of the remedy alone. . . . Accordingly, the right to bring a wrongful death claim pursuant to § 52-555 exists only during the statutorily prescribed time period, and expires thereafter. . . . Because the limitation period of § 52-555 is jurisdictional in nature, [a plaintiff] shoulder[s] a heavy burden of establishing that § 52-555 is preempted by

another statute of limitations." (Citations omitted; internal quotation marks omitted.) *Greco* v. *United Technologies Corp.*, 277 Conn. 337, 349–50, 890 A.2d 1269 (2006). "Because the plaintiff['s] action is one for wrongful death, § 52-555 presumptively governs the plaintiff['s] claims." Id., 348.

"The wrongful death statute; General Statutes § 52-555; is the sole basis upon which an action that includes as an element of damages a person's death or its consequences can be brought." *Lynn* v. *Haybuster Mfg., Inc.*, 226 Conn. 282, 295, 627 A.2d 1288 (1993). "As a result, where damages for a wrongful death are sought, the pertinent statute of limitations is to be found in § 52-555 rather than the statutes of limitations for torts or negligence generally." *Spruill* v. *Ahmed*, Superior Court, judicial district of Tolland, Complex Litigation Docket, Docket No. X07-CV-01-0078041 (March 10, 2003) (*Sferrazza, J.*) (34 Conn. L. Rptr. 239).

"This rule, however, does not bar the plaintiff from advancing alternative theories of recovery, or causes of action, pursuant to the wrongful death statute." (Internal quotation marks omitted.) *Monterio* v. *Crescent Manor, LLC*, Superior Court, judicial district of Waterbury, Docket No. CV-03-0181589 (May 21, 2004) (*Matasavage, J.*).

Here, all of the plaintiff's claims against the CL&P defendants seek damages arising from the death of the plaintiff's decedent in July, 2006. While he has advanced different theories of liability (such as negligence, recklessness, and violation of the Connecticut Unfair Trade Practices Act [CUTPA], General Statutes § 42-110a et seq.), they all are subject to the two year limitations period set forth in § 52-555. See *Greco* v. *United Technologies Corp.*, supra, 277 Conn. 348–50.[5]

---

[5] At page 8 of his memorandum in support of his objection (#153), the plaintiff alludes to the three year limitations period for CUTPA actions and to "hiding evidence which was later discovered" in the 2008 action. These fragmentary references may not be considered. "[W]e repeatedly have stated

As noted above, this action was commenced against the CL&P defendants on July 28, 2009, nearly three years after the alleged incident. Accordingly, unless it comes within the purview of the accidental failure of suit statute, § 52-592, the plaintiff's claims against the CL&P defendants are time barred by the wrongful death statute, § 52-555. The court next addresses the parties' arguments concerning § 52-592.

## B

"[A] plaintiff may commence an otherwise time barred new action pursuant to the matter of form provision of § 52-592 (a) only if that failure was caused by a simple mistake or omission, rather than egregious conduct or gross negligence attributable to the plaintiff or his attorney." *Plante* v. *Charlotte Hungerford Hospital*, 300 Conn. 33, 46–47, 12 A.3d 885 (2011).

The "Supreme Court has set forth several broad policy goals that must be kept in mind when deciding whether a plaintiff should be permitted to avail himself or herself of § 52-592. Although § 52-592 should be broadly construed because of its remedial nature, it should not be construed so broadly as to hamper a trial court's ability to manage its docket by dismissing cases for appropriate transgressions. . . . In addition, a court must be watchful of attempts to avoid the very purpose of statutes of limitation, i.e., ensuring finality in the litigation process. . . . Nevertheless, looming behind § 52-592 is the overarching policy of the law to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his day in court." (Citations omitted; internal quotation marks omitted.)

that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Smith* v. *Andrews*, 289 Conn. 61, 80, 959 A.2d 597 (2008).

*Skinner* v. *Doelger,* 99 Conn. App. 540, 554–55, 915 A.2d 314, cert. denied, 282 Conn. 902, 919 A.2d 1037 (2007).

"[I]t is well established . . . that § 52-592 (a) is remedial and is to be liberally interpreted. . . . In previous cases considering the application of the accidental failure of suit statute, [the Supreme Court has] declined to adopt an extremely broad construction of the statute to the effect that, [t]he phrase, any matter of form, was used in [contradistinction] to matter of substance, as embracing the real merits of the controversy between the parties. . . . Rather, we have emphasized that § 52-592 (a) does not authorize the reinitiation of all actions not tried on . . . [their] merits, and that, [i]n cases where we have either stated or intimated that the any matter of form portion of § 52-592 would not be applicable to a subsequent action brought by a plaintiff, we have concluded that the failure of the case to be tried on its merits had not resulted from accident or even simple negligence. . . . In concluding that even disciplinary dismissals are not excluded categorically from the relief afforded by § 52-592 (a), we have noted the fact-sensitive nature of the inquiry and held that, [t]o enable a plaintiff to meet the burden of establishing the right to avail himself or herself of the statute, a plaintiff must be afforded an opportunity to make a factual showing that the prior dismissal was a matter of form in the sense that the plaintiff's noncompliance with a court order occurred in circumstances such as *mistake, inadvertence or excusable neglect.* . . . Indeed, even in the disciplinary context, only egregious conduct will bar recourse to § 52-592." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Plante* v. *Charlotte Hungerford Hospital,* supra, 300 Conn. 49–51. "Connecticut case law limiting the application of § 52-592 (a) to cases of good faith mistake, inadvertence or excusable neglect, and precluding it in cases of egregious conduct by an attorney or party, has been applied beyond the context of disciplinary dismissals." Id., 51.

"We have not often decided that a plaintiff, after a dismissal under an applicable rule of practice, should be denied access to the statute because the prior judgment was not a 'matter of form.' When we have done so, our decision has focused on conduct other than mistake, inadvertence or excusable neglect." *Ruddock* v. *Burrowes*, 243 Conn. 569, 577, 706 A.2d 967 (1998). "[B]latant and egregious conduct . . . was never intended to be condoned and sanctioned by the matter of form provision of § 52-592." (Internal quotation marks omitted.) *Plante* v. *Charlotte Hungerford Hospital*, supra, 300 Conn. 57.

"The inquiry under § 52-592, therefore, may be conceptualized as a continuum whereupon a case must be properly placed between one extreme of dismissal for mistake and inadvertence, and the other extreme of dismissal for serious misconduct or cumulative transgressions." *Skinner* v. *Doelger*, supra, 99 Conn. App. 554.

The court may rely on its previous determinations in the 2008 action. See id., 559 (court may determine why an earlier lawsuit failed by relying on the factual findings and legal conclusions drawn in that other action). Here, the record shows that the plaintiff has been afforded opportunities to make a factual showing that the prior dismissal was a "matter of form." As the court's two decisions in the 2008 matter, cited above, explain, the court considered the plaintiff's evidence, and written submissions, and oral arguments, in the course of considering whether to grant a nonsuit and in considering whether to open the nonsuit. The court made findings in those decisions concerning what occurred.[6] In

---

[6] In the September, 2009 decision, page 5, the court stated, "Since the allegations in the plaintiff's attorney's affidavit are contrary to the record, and the court's prior findings, an evidentiary hearing is not required in order to assess the plaintiff's assertions that the nonsuit resulted from "mistake, accident, or other reasonable cause." See General Statutes § 52-212 (a); *McCarthy* v. *Ward Leonard Electric Co.*, 104 Conn. App. 535, 545–46, 935 A.2d 189 (2007) (evidentiary hearing not required)."

addition, the court has considered the plaintiff's written submissions and oral arguments presented in response to CL&P's motion to dismiss the 2009 action.

In placing the circumstances here on the "continuum"; *Skinner* v. *Doelger*, supra, 99 Conn. App. 554; it is evident that the plaintiff's conduct in the 2008 action went far beyond "mistake, inadvertence or excusable neglect." See *Ruddock* v. *Burrowes*, supra, 243 Conn. 577. As discussed above, the plaintiff steadfastly refused to file a revised complaint which complied with the requests which had been deemed to have been automatically granted by the operation of Practice Book § 10-37 (a). The court already has found that the plaintiff's continued failure to comply with the court's clear orders in the 2008 action evidenced a wilful failure to do so. This amounts to blatant and egregious conduct, involving cumulative transgressions. The 2008 action did not fail against the CL&P defendants "for any matter of form." See General Statutes § 52-592 (a).

This matter concerns an alleged incident which occurred in July, 2006. The plaintiff has not contested the CL&P defendants' assertion, in their memorandum in support of their motion to dismiss (#143), page 26, that the complaint filed in the 2009 action still does not comply with the requested revisions which the plaintiff was ordered to make in the 2008 action. "By virtue of the delay, [the CL&P defendants] ha[ve] been subjected to an increased probability that the search for truth . . . may be impaired by the loss of evidence, whether by death or disappearances of witnesses, fading memories, disappearance of documents or otherwise." (Internal quotation marks omitted.) *Skinner* v. *Doelger*, supra, 99 Conn. App. 556–57.

In addition, in *Ruddock* v. *Burrowes*, supra, 243 Conn. 575, the Supreme Court explained that "our decisions also have underscored the importance of trial court

caseflow management of crowded dockets. Caseflow management is based upon the premise that it is the responsibility of the court to establish standards for the processing of cases and also, when necessary, to enforce compliance with such standards. Our judicial system cannot be controlled by the litigants and cases cannot be allowed to drift aimlessly through the system. . . . In the event of noncompliance with a court order, the directives of caseflow management authorize trial courts, in appropriate circumstances, to take action against either the errant attorney or the litigant who freely chose the attorney." (Citations omitted; internal quotation marks omitted.)

Parties should not be encouraged to disregard court orders. The circumstances here differ markedly from those in cases cited by the plaintiff. In *Tellar* v. *Abbott Laboratories, Inc.*, 114 Conn. App. 244, 252, 969 A.2d 210 (2009), the conduct "was neither repeated nor protracted. It consisted of a singular failure to comply with a discovery request over the course of four months." "In addition, the plaintiff provided a credible explanation for his failure to comply with the discovery request—namely, the grave health of members of his counsel's family that the defendant at no time has disputed. Furthermore . . . the plaintiff fully complied with the discovery request prior to filing his motion to open the judgment in the first action and prior to instituting the present action. His fifty-one page response to the defendant's discovery request was filed . . . less than eight months after the request first was made. Such compliance belies any contention that the plaintiff engaged in a pattern of repeated delay." Id., 254.

Here, in contrast, as outlined above, the plaintiff never provided an appropriate explanation for his failure to comply and did not comply, resulting in protracted delay. "[E]xcusable neglect" has not been shown to be involved. Id., 255. Likewise, the record here

differs from that in *Stevenson* v. *Peerless Industries, Inc.*, 72 Conn. App. 601, 806 A.2d 567 (2002). There, the court concluded that the plaintiff's actions amounted to excusable neglect, since "the plaintiff explained, after filing his action in 1998, he failed to respond timely to the request to revise and to discovery demands, due, in part, to miscommunication with counsel in Pennsylvania." Id., 607–608. In contrast to the record here, in *Stevenson*, the plaintiff's failure to respond occurred in the time span of six months, the plaintiff provided a credible excuse for his failure to respond, and the plaintiff asserted that he was prepared to comply with all requests. See id., 610.

The plaintiff's reference to *Burgess* v. *Vanguard Ins. Co.*, 192 Conn. 124, 125–27, 470 A.2d 244 (1984), is unavailing. There, in contrast to the plaintiff's conduct in the 2008 action, the plaintiffs filed an objection to a request to revise, which the court overruled, but then declined to file a substitute pleading. See id., 124–25. The claimed error which was the subject of appeal was "the decision overruling the plaintiffs' objection to the defendant's request to revise." Id., 125. As explained above, in the 2008 action, the plaintiff did not timely object to the CL&P defendants' requests to revise, which were automatically granted by operation of Practice Book § 10-37. While such a request is procedural in nature and not substantive, since the sufficiency of the allegations is not involved; see id.; here, the plaintiff's failure to respond resulted in the granting of the requests by operation of law. The court was not required to consider untimely objections. No acceptable excuse for the plaintiff's conduct has been offered. The plaintiff's own conduct resulted in the automatic granting of the requests to revise.

The plaintiff has not shown that the prior dismissal was a "matter of form," in that his noncompliance resulted from mistake, inadvertence or excusable

neglect. See *Plante* v. *Charlotte Hungerford Hospital*, supra, 300 Conn. 49–50. The disciplinary dismissal here resulted from blatant and egregious conduct, the wilful refusal to comply with court orders. Such conduct "was never intended to be condoned and sanctioned by the matter of form provision of § 52-592." (Internal quotation marks omitted.) Id., 57.

As discussed above, as to the CL&P defendants, this action is time barred by § 52-555. The plaintiff has not shown that § 52-592 is applicable here. Accordingly, the court lacks subject matter jurisdiction.

## IV

## CONCLUSION

For the foregoing reasons, the defendants Connecticut Light and Power Company, Northeast Utilities, and Northeast Utilities Service Company's motion to dismiss the claims against them is granted. It is so ordered.